Alton A. WEST, Appellant,

v.

The STATE of Texas, Appellee.

No. 45090.

Court of Criminal Appeals of Texas.

Feb. 13, 1974.

Rehearing Denied with Opinion
Oct. 9, 1974.

Rehearing Denied Oct. 30, 1974.

Karl A. Maley, Michael Anthony Maness, Houston, Phil Brummett, Lubbock, J. Mack Ausburn, San Antonio, for appellant.

Thoms J. Purdom, County Atty., & Joel Howard, Asst. County Atty., Lubbock, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ODOM, Judge.

Appellant was convicted of the offense of exhibiting obscene matter; punishment was assessed at a $200.00 fine, and a thirty day jail term, probated for one year. Upon appeal the judgment was affirmed by this Court on September 25, 1972. West v. State, 489 S.W.2d 597. Thereafter the United States Supreme Court granted his petition for writ of certiorari, vacated the judgment, and remanded the cause to this Court for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult

Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L. Ed.2d 492 (1973); United States v. 12 200-ft. Reels of Super 8 mm. Film, 413 U. S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973), on October 23, 1973 (West v. Texas, 414 U.S. 961, 94 S.Ct. 268, 38 L.Ed.2d 209).

Upon his original appeal to this Court, appellant challenged his conviction on four grounds. Of those four, only three merit further consideration in light of the recent Supreme Court decisions: (1) the film should have been suppressed because no adversary hearing was conducted prior to the issuance of the search warrant and seizure of the film; (2) the evidence was insufficient to support a finding that the film was obscene; and (3) the film was not obscene as a matter of law.

■ In Heller v. New York, supra, the Supreme Court held that there is no absolute right to a prior adversary hearing where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution. Distinguishing earlier cases, the Court held:

". . . seizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral mag-

istrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned."

In the instant case, it is undisputed that a single copy of the film was seized for the *bona fide* purpose of preserving it as evidence in a criminal proceeding. Complaint and information were filed November 19, 1969, the same day and the search warrant issued. The film was seized and appellant was arrested, arraigned, entered his plea of not guilty, and had his bond set the next day. At no time has appellant contended, in the instant case, that the seizure prevented the continued exhibition of the film.

■ The only remaining issue concerning the constitutionality of the seizure is that of the availability of a prompt judicial determination of the obscenity issue in an adversary proceeding *following* the seizure, at the request of any interested party. Although the *Heller* decision says a seizure under such conditions is constitutionally permissible, it does not hold the absence of such a condition would in all cases render the seizure unconstitutional, nor does it hold that a film so seized must be excluded from evidence.

In the instant case, appellant did not allege upon appeal that he was denied a post-seizure adversary hearing, nor was such claim raised at trial. His claim was that no adversary hearing was held *prior* to seizure of the film. In addition, in appellant's case the trial court issued an order setting a pre-trial conference under

Article 28.01, Vernon's Ann.C.C.P.[1] for January 12, 1970, approximately eight weeks after the film was seized. Prior to issuance of notice of this hearing, no objections to the seizure of the film had been filed. Although no hearing was conducted on the date set, the record reflects no complaint, by motion or otherwise, to the failure to hold such hearing on the set date. We must therefore conclude that even if it be assumed he desired a prompt post-seizure determination there was a lack of diligence on the part of appellant.

Thus, even if denial of a requested post-seizure hearing would render the seizure unconstitutional, we hold that failure diligently to seek such a hearing would bar appellant from complaining of the failure to the court to conduct one sua sponte.

Upon this further consideration we still find appellant's first ground of error is without merit.[2]

We will next consider appellant's contention that the evidence was insufficient to support a finding that the film was obscene.

Appellant contends there was no testimony to establish community standards, no testimony as to lack of redeeming social value, and no testimony regarding an appeal to prurient interest.

■ In Paris Adult Theatre I v. Slaton, supra, the Supreme Court held:

". . . [I]t [was not] error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence. . . . The films,

obviously, are the best evidence of what they represent."

And in Kaplan v. California, supra:

"We . . . reject in Paris Adult Theatre I v. Slaton, *supra*, any constitutional need for 'expert' testimony on be-lf of the proscu half of the prosecution, or for any other ancillary evidence of obscenity, once the allegedly obscene materials themselves are placed in evidence. Paris Adult Theatre I, supra, 413 U.S., at 55–58, 93 S. Ct. at 2634–2635 (1973). The defense should be free to introduce appropriate expert testimony, see Smith v. California, 361 U.S. 147, 164–165, 80 S.Ct. 215, 224–225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), but in 'the cases in which this Court has decided obscenity questions since *Roth*, it has regarded the materials as sufficient in themselves for the determination of the question.' Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966)."

In the instant case the film was introduced in evidence. Appellant's second ground is overruled.

■■ Appellant's final claim is that the film was not obscene as a matter of law. As his sole contention thereunder, appellant alleges "the film consists of females who disrobe and feign some type of sexual satisfaction which is self-induced." As authority, appellant quotes from Pinkus v. Pitchess, 429 F.2d 416, a Ninth Circuit case. What appeals to the prurient interest or is patently offensive in the Ninth Circuit is of no relevance in the State of Texas. As held in Miller v. California, supra:

"[O]bscenity is to be determined by applying 'contemporary community stand-

---

1. Although Art. 28.01, supra, does not provide for the setting of such hearing "at the request of any interested party", in light of *Heller*, supra, a court should give careful consideration to any request for such a hearing when the motion alleges that the matter seized is constitutionally protected under the First Amendment.

2. We find it undisputed that the initial seizure was made following a viewing of the film by a neutral magistrate upon a warrant issued by him and need not reconsider the issue of whether such procedure constituted an adversary hearing.

dards,' see Kois v. Wisconsin, *supra,* 408 U.S. [229], at 230, 92 S.Ct. [2245], at 2246, 33 L.Ed.2d 312 (1972), and Roth v. United States, *supra,* 354 U.S. [476], at 489, 77 S.Ct. [1304], at 1311, 1 L.Ed. 2d 1498 (1957), not 'national standards.' "

It is still the opinion of this Court, as expressed in our prior opinion (West v. State, supra):

"The film which is before us for review depicts nothing but a sequential representation of explicit sexual acts. Each sequence of sexual conduct can only be interpreted within the context of the other sequences of sexual conduct. No ideas are presented nor is there an attempt to present ideas. The sequential representation in this film of nothing but isolated acts of sexual conduct demonstrates that its sole object was the commercial exploitation of the prurient interest of those persons who paid to view it."

The film is obscene. Appellant's final ground is overruled.

Although appellant made no further argument on the question of whether the film is obscene as a matter of constitutional law than that stated above, an examination of Article 527, Vernon's Ann.P.C., in light of the *Miller* substantive standards will be made in the interest of justice (Art. 40.09, Sec. 13, V.A.C.C.P.).

In Miller v. California, supra, the Supreme Court was "called on to define the standards which must be used to identify obscene material that a State may regulate without infringing the First" and Fourteenth Amendments. The basic standards were then set forth:

"This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment. Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972). . . . We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. . . . As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."

■ It initially appears that *Miller* lays down four conditions which must be met before a work may be prohibited by State law as obscene: (1) The conduct depicted or described must be specifically defined by state law. (2) The work, taken as a whole, must appeal to the prurient interest in sex. (3) The work must portray sexual conduct in a patently offensive way. And (4) the work, taken as a whole, must lack serious literary, artistic, political, and scientific value.

■ These four conditions, however, are not all of the same character. The first is set apart from the last three and is clearly distinct in the interest it is designed to protect. The Court's statement of the last three conditions is set apart from the statement of the first condition, and it begins: "A state offense must also be limited to works which . . ." To create an offense not so limited is to prohibit conduct protected by the First Amendment; that is, to prohibit as obscene that which is not, in a constitutional sense, obscene. The Court has said obscenity is not protected by the First Amendment; therefore the State may prohibit all obscenity without violating First Amendment rights. If, on the other hand, the State prohibits as obscene works which do not appeal to the prurient interest or do not portray sexual conduct in a patently offensive way, and

which are therefore not obscene, but instead protected by the First Amendment, then the State has gone too far and the statute is overbroad. The Supreme Court has thus stated that even a work which is a "prurient, patently offensive depiction or description of sexual conduct," may not be obscene and merit First Amendment protection, if it has serious literary, artistic, political, or scientific value. It will thus be seen that a statute prohibiting works lacking one of the last three elements will be overbroad inasmuch as it condemns protected First Amendment rights, and therefore be unconstitutional, either facially or as applied.

Before passing to a discussion of the first element, we observe that the Texas statutes, under both the old Penal Code[3] and the new one[4] reveal no such vice of overbreadth, and establish standards at least as narrow as those required by *Miller*.

While it is clear that the last three conditions are elements of the constitutional definition of obscenity, such cannot be said of the first one. Since obscenity is not protected by the First Amendment, the State may prohibit *all* obscenity. Whether a work is obscene is *not* dependent upon whether it is described in the State statute, but on whether it appeals to the prurient interest, is patently offensive, and lacks serious literary, artistic, political and scientific value. Whether described in the statute or not, if the work falls within the last three conditions it is obscene and

therefore lacks First Amendment protection. This being true, it is clear that the first standard is not an element of the definition of obscenity since whether a work describes or depicts conduct defined in the statute, if it meets the three elements of obscenity it is not entitled to First Amendment protection and *may* be prohibited by the State.

Prohibition of a work describing or depicting conduct *not* defined in the State statute, but which work is a "prurient, patently offensive depiction or description of sexual conduct" lacking "serious literary, artistic, political, or scientific value," is prohibition of a work which *Miller* says does not merit First Amendment protection. *Miller,* supra, at 93 S.Ct. 2616. Thus such a prohibition would not be unconstitutional for overbreadth. What, then, is the interest sought to be protected by the *Miller* requirement that the prohibited description or depiction of sexual conduct be of conduct "specifically defined by the applicable state law, as written or authoritatively construed?"[5] This question is answered in *Miller* as follows:

"Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public

---

3. Article 527, Section 1(A), Acts 1969, 61st Leg., p. 1547, ch. 468, Sec. 1:
    "(A) 'Obscene' material means material (a) the dominant theme of which, taken as a whole, appeals to a prurient interest; (b) which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) which is utterly without redeeming social value."

4. Section 43.21, Subsection 1, V.T.C.A., Acts 1973, 63rd Leg., Chapter 399, effective January 1, 1974:

    "(1) 'Obscene' means having as a whole a dominant theme that:
    "(A) appeals to a prurient interest in sex, nudity, or excretion;
    "(B) is patently offensive because it affronts contemporary community standards relating to the description or representation of sex, nudity, or excretion; and
    "(C) is utterly without redeeming social value."

5. Miller, supra, at 2615.

and commercial activities may bring prosecution." 93 S.Ct., at 2616.

We think it clear the intent of this requirement is to provide notice and avoid the vice of vagueness.

In this respect, then, the "specifically defined" requirement is distinct from those which constitute the elements of the constitutional definition of obscenity. How such a requirement will result in a statute less vague than one without it is a more difficult question to satisfactorily resolve. Supposedly a statute could define all conceivable sexual conduct, and thereby satisfy the requirement of a specific definition: the abiding question would remain whether the depiction or description thereof is a "prurient, patently offensive depiction or description" as "determined by applying 'contemporary community standards,'" and lacks "serious literary, artistic, political, or scientific value." The difficult decision which must be made by the purveyor is not what the conduct is, but what the community standards are. Of course if the conduct depicted or described is not specifically defined by the law as written or construed, the purveyor may operate with the knowledge he is safe from prosecution. But this would not be because he is not purveying obscene matter, for he may well be, but rather because the state law, by not including the conduct described or depicted, has chosen not to prohibit that particular type of obscene matter.

Whether the first condition laid down in *Miller* will in practice have the effect intended is not before this Court. For our further consideration upon this remand is whether the Texas law on obscenity satisfies that condition.

Article 527, V.A.P.C., included in the statutory definition of obscenity the requirement that the material be "patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters."

In 53 Tex.Jur.2d, Statutes, Section 119, it is written:

"When in the course of any controversy a question as to the effect or operation of a statute is presented, it becomes the duty and it is the province of the court to construe the statutory language. This consists in ascertaining and declaring the fair and proper meaning of the law, and in giving it, if possible, the effect and scope intended by the legislature."

See also 53 Tex.Jur.2d, Statutes, Sections 125, 126, 130, 135, 146, 148, 158 and 160.

In 1972 this Court was called upon to consider a claim that Article 527, supra, was void for vagueness. In Bryers v. State, 480 S.W.2d 712, 715, it was held:

"The statutory definition of 'obscenity', Article 527 § 1, tracks almost word-for-word the language of the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); A Book Named 'John Cleland's Memoirs of a Woman of Pleasure' v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), and Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). The vagueness contention is overruled."

Clearly the language of the statute does closely track the language of the Supreme Court. We find it equally clear that the Legislature intended to include within the statutory definition of obscene material all material not constitutionally protected by the First Amendment because of its obscene character. Such intent, however, can only be given effect if the language of the statute does include all such material in its definition. In one respect the statutory definition is narrower than constitutional requirements, and this Court cannot amend what the Legislature has written to make the statute broader than its language.

In spite of the holding in *Miller*, supra, that a depiction or description of prurient,

patently offensive sexual conduct that lacks serious literary, artistic, political, or scientific value does not merit First Amendment protection, the statutory definition of obscene material only includes such descriptions or representations as are utterly without redeeming social value. Thus such material as lacks serious literary, artistic, political or scientific value, but yet is not utterly without redeeming social value, though constitutionally obscene, is not statutorily obscene under Article 527, supra.

On the other hand, no impermissible judicial redrafting is involved in construing that portion of the statutory definition referring to "the description or representation of sexual matters." It is clear the Legislature intended to include *all* descriptions or representations of prurient, patently offensive sexual conduct utterly without redeeming social value, and to this end included all such descriptions and representations of *all* sexual matters. "Sexual matters" is not a technical term nor is it defined in the statute. It is, therefore, to be understood in its ordinary meaning. Art. 8, V.A.P.C. It would, therefore, certainly include such examples as those suggested in Miller, to-wit: (a) "representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated", and (b) "representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." "Sexual matters" clearly would also include courtship, kissing, "petting", sexual caressing, sexual fondling, rape, prostitution, birth, nursing, birth control and abortion. Obviously not all descriptions or representations of such matters are obscene. Only such descriptions or representations as are patently offensive because they affront contemporary community standards relating thereto and which have a dominant theme which, taken as a whole, appeals to a prurient interest, and which further are utterly without redeeming social value would be obscene under Article 527, supra. It may be that as to some sexual matters, such as courtship,

there could be no such depiction as would be obscene within the terms of the statute. Such factual impossibility would not, however, render the statute void any more than the extinction of the sabre-tooth tiger or the whooping crane would render void a statute prohibiting their capture.

As a matter of state law we find the legislative use of the term "sexual matters" was intended to mean precisely that, and have no difficulty in construing it precisely in that manner. Furthermore, we give a like construction to the language used by the Legislature in its drafting of Section 43.21, Subsection 1, supra, wherein it refers to the "description or representation of sex, nudity, or excretion." Certainly at a minimum such language includes each stated type of conduct above construed as being within the intent expressed by the term "sexual matters" in Article 527, V.A.P.C.

As regards this appellant concerning today's decision and the question of due notice to purveyors of material depicting or describing sexual matters, we note that at no time has appellant urged before this Court any claim that he did not know or was not on reasonable notice that the film seized depicted sexual matters within the meaning of Article 527, V.A.P.C.

Upon this further consideration we decline to alter our former disposition of this appeal.

The judgment is affirmed.

## OPINION ON APELLANT'S MOTION FOR REHEARING

ONION, Presiding Judge.

Appellant was convicted on June 23, 1971, of the offense of exhibiting obscene matter, to-wit: a sixteen (16) mm. motion picture under the provisions of Article 527, Vernon's Ann.P.C., in effect on the date of the offense—November 18, 1969 (Acts 1969, 61st Leg., p. 1547, Ch. 468, effective

June 10, 1969.[1] The conviction was affirmed in 489 S.W.2d 597 (Tex.Cr.App. 1972). Subsequently, the United States Supreme Court granted his petition for writ of certiorari, West v. Texas, 414 U.S. 961, 94 S.Ct. 268, 38 L.Ed.2d 209, vacated the judgment of this court and remanded the cause on October 23, 1973, for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); and Alexander v. Virginia, 413 U.S. 836, 93 S. Ct. 2803, 37 L.Ed.2d 993 (1973).

The remand to this court appears to have been made by the Supreme Court to determine whether the statute as written or as authoritatively construed would pass muster under the requirements of Miller.

On February 13, 1974, this court did reconsider the cause in light of the Miller cluster or series of cases and again affirmed the conviction by written opinion. Appellant's motion for leave to file a motion for rehearing was granted and oral argument permitted. In his motion for rehearing appellant contends that once this court recognized the "specifically defined" requirement of Miller was to provide fair notice and avoid the vice of vagueness this court's analysis and conclusion were in error by saying construction of the term "sexual matters" as used in the statute is specifically defined by construing it to include "all" sexual matters, which would even encompass courtship, kissing, petting, birth and birth control, etc. He urges that Article 527, Vernon's Ann.P.C., on its face does not meet the "specifically defined" requirement of Miller and that it should be declared unconstitutional, permitting the Legislature to re-draft the statute in light of the Miller cluster of cases. He further urges that if this court is to authoritatively construe the statute, it should confine the proscribable words to those which depict or describe patently offensive hard-core sexual conduct, and if it is so confined, then such standard should apply only prospectively and have no application to him. The State Attorney General, et al., have filed an amicus curiae brief which urges that this court give a more limited construction to the term "sexual matters" as used in the statute and hold it to mean hard-core sexual conduct consisting of either patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, or patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals in order to meet the test of constitutionality and to provide the prosecutors of this State and prospective purveyors of material which may be characterized as obscene or not obscene with more definite guidelines.

Miller involved a California statute which incorporated the three-pronged

---

1. Section 1 of such Act provides in part as follows:

   "(A) 'Obscene' material means material (a) the dominant theme of which, taken as a whole, appeals to a prurient interest; (b) which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) which is utterly without redeeming social value.

   "(B) 'Prurient interest' means a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters. If it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, the appeal of the subject matter shall be judged with reference to such audience." (Emphasis supplied)

*Roth-Memoirs* test, just as the Texas statute in question has. In writing for the majority in *Miller,* Chief Justice Burger wrote:

" . . . But now the Memoirs test has been abandoned as unworkable by its author and no member of the Court today supports the Memoirs formulation."

In repudiating the *Memoirs* test and noting that it had never commanded a majority of the courts, the Court stated that one part of the test:

" . . . called on the prosecution to prove a negative, i. e., that the material was 'utterly without redeeming social value'—a burden virtually impossible to discharge under our criminal standards of proof."

In laying down new tests for determining obscene material, the Court recognized that obscenity was not protected by the First Amendment and States have a legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles. The Court then said:

"We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. *State statutes designed to regulate obscene materials must be carefully limited.* See Interstate Circuit, Inc. v. Dallas, supra, [390 U.S. 676] at 682–685, 88 S.Ct. [1298] at 1302–1305 (1968) [20 L.Ed.2d 225]. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. *That conduct must be specifically defined by the applicable state law, as written or authoritatively construed.* A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political,

or scientific value." 93 S.Ct. at 2614–2615 (Emphasis supplied)

The Court then laid down the constitutional test for control of obscenity by saying:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct *specifically defined by the applicable state law,* and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 93 S.Ct. at p. 2615 (Emphasis supplied)

The Court further added:

"If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary . . . .

"We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under the second part (b) of the standard announced in this opinion, supra:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

"Under the holdings announced today, no one will be subject to prosecution for

the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed. We are satisfied that these specific prerequisites will provide fair notice to a dealer in such materials that his public and commercial activities may bring prosecution . . . . ."[2]

Applying the *Miller* standards of specificity to Article 527, Vernon's Ann.P.C., it is manifest that Section 1 thereof does not define the sexual conduct whose display or description is intended to be prohibited. If *Miller* had been issued without mention of the possibility of authoritative judicial construction of an obscenity statute which may fulfill the constitutional requirement that State law specify the sexual conduct which is prohibited, then there would be no question but that Article 527, supra, would be unconstitutional.[3] And while authoritative judicial construction appears to be an available tool to save some obscenity statutes,[4] some State courts have declined

to use such tool to save statutes which by their very terms fail to meet the *Miller* requirement of specificity.[5] Many of these courts considered that it was their function to interpret a statute and not to usurp the prerogatives of the Legislature by supplying essential elements to a statute which were omitted. See, i. e., Art Theater Guild, Inc. v. State, 510 S.W.2d 258 (Tenn.1974). They declined to add a judicial gloss by engrafting onto such statutes the missing specificity. In the post-*Miller* era other State courts have been able to uphold the validity of their obscenity statutes by concluding that previous judicial construction of the applicable statute (which lacked specificity itself) had already provided the specificity required by *Miller*.[6]

Still other State courts have read into the applicable obscenity statute involved those plain examples or definitions of specific sexual conduct which a State statute could define for regulation under the second part (b) of the standard announced in *Miller*.[7]

2. It would thus appear that the Supreme Court limited the scope of State regulation of obscenity to "sexual conduct specifically described," but apparently invited courts to cure defects in statutes by judicial construction, and the Court eliminates the "utterly without redeeming social value" constitutional test, which it acknowledges was very difficult to meet, and replaces it with a new constitutional test—the "without serious literary, artistic, political, or scientific value" test, which is a standard less difficult for the prosecution to meet.

3. A cursory examination of the Oregon and Hawaii statutes referred to approvingly in *Miller* points out the inadequacy of the Texas statute.

4. Although *Miller* declared that an otherwise vague State obscenity statute may be saved by "authoritative construction," *Miller* never exactly defined what "authoritative construction" is. See Miller v. Goodrich Corp., 218 N.W.2d 771 (1974—Mich. Court of Appeals).

5. Commonwealth v. Horton, Mass., 310 N. E.2d 316 (1974); Stroud v. State, 300 N. E.2d 100 (Ind.1973); State v. Wedelstedt, 213 N.W.2d 652 (Iowa 1973); State v. Shreveport News Agency, Inc., 287 So.2d 464

(La.1973); Art Theater Guild, Inc. v. State, 510 S.W.2d 258 (Tenn.1974).

6. Rhodes v. State, 283 So.2d 351, 355–356 (Fla.1973); State ex rel. Wampler v. Bird, 499 S.W.2d 780, 784 (Mo.1973); People v. Heller, 33 N.Y.2d 314, 327, 329, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973); State ex rel. Keating v. A Motion Picture Film Entitled "Vixen," 35 Ohio St.2d 215, 301 N.E.2d 880 (1973); Price v. Commonwealth, 201 S.E.2d 798 (Va.1974); People v. Enskat, 33 Cal. App.3d 900, 908, 109 Cal.Rptr. 433 (1973), cert. denied sub nom. Enskat v. California, — U.S. —, 94 S.Ct. 3225, 41 L.Ed.2d 1172 (March 19, 1974); Miranda v. Hicks, 15 Cr.L. 2309 (C.D.Cal. June 4, 1974). See also Jenkins v. State, 230 Ga. 726, 199 S.E.2d 183 (1973), rev'd Jenkins v. Georgia, — U.S. —, 94 S.Ct. 2750, 41 L.Ed.2d 640 (1974).

7. McCrary v. State, Cr.L. (Okl.Cr.App. 1974); Gibbs v. State, 504 S.W.2d 719 (Ark.1974); State v. J–R Distributors, Inc., 82 Wash.2d 584, 512 P.2d 1049, 1060 (1973), cert. denied sub nom. J–R Distributors, Inc. v. Washington, — U.S. —, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (December 17, 1973). See State v. Welke, 216 N.W.2d 641 (Minn. 1974) (*Miller* standard said to be applicable but not retroactively.)

Abandoning and putting aside what we said on original submission about the specificity requirement of *Miller* as it related to Article 527, supra, we now interpret and restrict by judicial construction the term "sexual matters" used therein in Section 1 thereof to the examples set forth in *Miller* as follows:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

Further, we note that in Phelper v. State, 396 S.W.2d 396 (Tex.Cr.App.1965), this court held that pictures showing men and women in the nude engaged in acts of sexual intercourse were obscene under Article 527, Vernon's Ann.P.C. (with the record reflecting that the offense occurred in November 1963).

In Moore v. State, 470 S.W.2d 391 (Tex.Civ.App.—San Antonio 1971, writ ref'd n. r. e.), it was held that specific magazines containing photographs or depictions of nudity, including unclothed human male and female genitalia in close proximity, and acts of sexual perversion, specific books consisting of detailed verbal descriptions in course and vulgar language of sexual acts, and specific movie films containing similar matter and running the gamut of sexual experience and bizarre descriptions of different acts of sexual intercourse were obscene.

And in Bryers v. State, 480 S.W.2d 712 (Tex.Cr.App.1972), it was held that where "pandering" is shown material may be found constitutionally obscene even though not in violation of the standard defining obscenity.

Further, this court, in Hunt v. State, 475 S.W.2d 935 (Tex.Cr.App.1972), held that a magazine containing pictures of young females naked as to their genital areas was not obscene in the constitutional sense, in absence of suggestion of assault upon individual privacy by publication in the manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure or evidence of pandering. And in Thacker v. State, 490 S.W.2d 854 (Tex.Cr.App.1973), the court held that a magazine containing photographs portraying nude females and photographs appearing to show some contact between sexes was not obscene where the magazine contained no overt portrayals of sexual activity.

It is clear from these cases that Article 527, supra, has been authoritatively construed so as to meet the requirements of *Miller*. It is, of course, true that only the *Phelper* case had been handed down at the time of the alleged offense in the instant case, but we observe that the Legislature expressly incorporated the *Roth-Memoirs* test in the statute in an attempt to satisfy constitutional requirements and the statute as construed. *Phelper* was applicable to the appellant, given the film here in question, which contained sequences of a nude man and woman engaged in explicit sexual activity and two nude women also engaged in such activity. The conduct here was clearly prohibited by the existing statute and prior case law, and as applied to such matter, the potential vagueness of the statute has been cured by prior judicial construction.

Only recently the United States Supreme Court in Hamling et al. v. United States,

For federal cases to the same effect see United States v. 12 200 Ft. Reels of Super 8mm. Film, 413 U.S. 123, 130, 93 S.Ct. 2665, 37 L.Ed.2d 500 (footnote #7) (1973). See also United States v. One Reel of Film, 481 F.2d 206, 209 (1st Cir. 1973); United States v. One Reel of 35MM Color Motion Picture

Film Entitled "Sinderella," Sherpix, Inc., 491 F.2d 956 (2d Cir. 1974). Cf. United States v. Thevis, 484 F.2d 1149, 1155 (5th Cir. 1973), cert. denied sub nom. Thevis v. United States, —— U.S. ——, 94 S.Ct. 3222, 41 L.Ed. 2d 1170 (1974).

—— U.S. ——, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), wrote:

"At no point does *Miller* or any of the other obscenity decisions decided last term intimate that the constitutionality of pre-*Miller* convictions under statutes such as 18 U.S.C. § 1461 was to be cast in doubt. Indeed, the contrary is readily apparent from the opinions in those cases. We made clear in *Miller,* 413 U.S., at 24, n. 6, 93 S.Ct. 2607, at 2615 that our decision was not intended to hold all state statutes inadequate, and we clearly recognized that existing statutes 'as construed heretofore or hereafter, may well be adequate.' That recognition is emphasized in our opinion in United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). . . . ."

Later, the Court said:

"*Miller* undertook to set forth examples of the types of material which a statute might proscribe as portraying sexual conduct in a patently offensive way, 413 U.S., at 25–26, 93 S.Ct. 2607, at 2615–2616, and went on to say that no one could be prosecuted for the 'sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct specifically defined by the regulating state law, as written or construed.' Id., at 27, 93 S.Ct., at 2616. As noted above, we indicated in United States v. 12 200-ft. Reels of Film, 413 U.S., at 130 n. 7, 93 S.Ct. 2665, at 2670, that we were prepared to construe the generic terms in 18 U.S.C. § 1462 to be limited to the sort of 'patently offensive representations or description of that specific "hard core" sexual conduct given as examples in Miller v. California.' We now so construe the companion provision in 18 U.S.C. § 1461, the statute under which this prosecution was brought. As so construed, we do not believe that petitioners' attack on the statute as unconstitutionally vague can be sustained.

"*Miller,* in describing the type of material which might be constitutionally proscribed, 413 U.S., at 25, 93 S.Ct. 2607, at 2615 was speaking in terms of substantive constitutional law of the First and Fourteenth Amendments. See Jenkins v. Georgia, —— U.S. ——, 94 S.Ct. 2750, 40 L.Ed.2d ——. While the particular descriptions there contained were not intended to be exhaustive, they clearly indicate that there is a limit beyond which neither legislative draftsmen nor juries may go in concluding that particular material is 'patently offensive' within the meaning of the obscenity test set forth in the *Miller* cases. And while the Court in *Miller* did refer to 'specific prerequisites' which 'will provide fair notice to a dealer in such materials,' 413 U.S., at 27, 93 S.Ct. 2607, at 2616, the Court immediately thereafter quoted the language of the Court in Roth v. United States, 354 U.S., at 491–492, 77 S.Ct. 1304, at 1312–1313, concluding with these words:

" 'That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . . .' 413 U.S., at 28 n. 10, 93 S.Ct. 2607, at 2617.

"The *Miller* cases, important as they were in enunciating a constitutional test for obscenity to which a majority of the Court subscribed for the first time in a number of years, were intended neither as legislative drafting handbooks or as manuals of jury instructions. 18 U.S.C. § 1461 had been held invulnerable to a challenge on the ground of unconstitutional vagueness in *Roth;* the language of *Roth* was repeated in *Miller,* along with a description of the types of material which could constitutionally be proscribed and the adjuration that such statutory proscriptions be made explicit either by their own language or by judicial construction; and United States v. 12

200-ft. Reels of Film, *supra*, made clear our willingness to construe federal statutes dealing with obscenity to be limited to material such as that described in *Miller*. It is plain from the Court of Appeals' description of the brochure involved here that it is a form of hardcore pornography well within the types of permissibly proscribed depictions described in *Miller*, and which we now hold § 1461 to cover. Whatever complaint the distributor of material which presented a more difficult question of obscenity *vel non* might have as to the lack of a previous limiting construction of 18 U.S.C. § 1461, these petitioners have none. See Dennis v. United States, 341 U.S. 494, 511-515, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (opinion of Vinson, C. J.).

"Nor do we find merit in petitioners' contention that cases such as Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), require reversal of their convictions. The Court in *Bouie* held that since the crime for which the petitioners there stood convicted was 'not enumerated in the statute' at the time of their conduct, their conviction could not be sustained. Id., at 363, 84 S.Ct. 1697, at 1707. The Court noted that 'a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language.' 378 U.S., at 352, 84 S.Ct. 1697, at 1702. But the enumeration of specific categories of material in *Miller* which might be found obscene did not purport to make criminal, for the purpose of 18 U.S.C. § 1461, conduct which had not previously been thought criminal. That requirement instead added a 'clarifying gloss' to the prior construction and therefore made the meaning of the federal statute involved here 'more definite' in its application to federal obscenity prosecutions. Bouie v. City of Columbia, 378 U.S., at 353, 84 S.Ct. 1697,

at 1702. Judged by both the judicial construction of § 1461 prior to *Miller*, and by the construction of that section which we adopt today in the light of *Miller*, petitioners' claims of vagueness and lack of fair notice as to the proscription of the material which they were distributing must fail."

For the same reason set forth above, we find appellant's reliance in the instant case upon Bouie v. City of Columbia, supra, to be misplaced, and find no merit to his claims of vagueness and lack of fair notice as to the proscription of the film here in question.

One further problem presents itself. In Hamling v. United States, supra, the Supreme Court held that defendants convicted prior to the announcement of the *Miller* decisions but whose convictions were on direct appeal at the time should receive any benefit available to them from those decisions. See Jenkins v. Georgia, — U. S. —, 94 S.Ct. 2750, 41 L.Ed.2d 640, 15 Cr.L. 3259 (1974).

The *Miller* decisions held it was no longer necessary as a matter of federal constitutional law to meet the "utterly without social value" test—the third part of the three-pronged *Roth-Memoirs* formulation— and that the prosecution need only prove, to satisfy federal constitutional standards, the matter has no "serious literary, artistic, etc., value."

Whether this part of the *Miller* decisions benefits the appellant in the instant case is answered by the Supreme Court in Hamling v. United States, supra, where it was said:

"Petitioners' final *Miller*-based contention is that our rejection of the third part of the *Memoirs* test and our revision of that test in *Miller* indicates that 18 U.S.C. § 1461 was at the time of their conviction unconstitutionally vague for the additional reason that it provided insufficient guidance to them as to the proper test of 'social value.' But our

opinion in *Miller* plainly indicates that we rejected the *Memoirs* 'social value' formulation, not because it was so vague as to deprive criminal defendants of adequate notice, but instead because it represented a departure from the definition of obscenity in *Roth,* and because in calling on the prosecution to 'prove a negative,' it imposed a '[prosecutorial] burden virtually impossible to discharge' and which was not constitutionally required. Miller v. California, 413 U.S., at 22, 93 S.Ct. 2607, at 2613. Since *Miller* permits the imposition of a lesser burden on the prosecution in this phase of the proof of obscenity than did *Memoirs,* and since the jury convicted these petitioners on the basis of an instruction concededly based on the *Memoirs* test, petitioners derive no benefit from the revision of that test in *Miller.*"

■ In the instant case the appellant was convicted by the trial court following a waiver of trial by jury under a statute expressly incorporating the *Memoirs* test, and we cannot conclude that he derives any benefit from the *Miller* decision.

To recapitulate in part: On rehearing we abandon our interpretation on original submission of the term "sexual matters" as used in Article 527, supra, under which this conviction was obtained and now interpret and limit and restrict by judicial construction such term to the examples set forth in *Miller* as follows:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

For the reasons stated, the appellant's motion for rehearing is overruled.

ODOM, Judge (concurring).

Although I concur in the disposition made by the majority, I am unable to accept their reasoning in the following particulars.

The majority opinion, in addressing Article 527, V.A.P.C., purports to "interpret and restrict by judicial construction" the term "sexual matters" as used therein. What have the majority done with Article 8, V.A.P.C., in the process? That statute, some may still recall, provided that terms not specially defined are to be given their ordinary meaning, as understood in common language. Can the majority really mean that "sexual matters," as commonly understood, means precisely, neither more nor less than, ultimate sexual acts, masturbation, excretory functions, and lewd exhibition of the genitals? Although some may not regard excretory functions as sexual matters, the majority of this Court and the Supreme Court (Miller v. California, 413 U.S. 15, 93 S.Ct. 2607) do hold them in such regard; and, this Court so proposed for purposes of statutory interpretation in its unanimous opinion of February 13, 1974. On the other hand, unless the majority are of the opinion that "a woman mouthing the penis of a horse" (Hamling v. United States, —— U.S. ——, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)) is an ultimate sexual act (and perhaps they are of that opinion), then I presume they would conclude its representation could not be prohibited under Article 527. But if this be an ultimate sexual act, I ask: Is a woman with a horse less ultimate than two horses? Or: Are the breeding stables in Texas henceforth to be rated X?

Regarding the narrowness of the majority's construction of Article 527, it is clear that the examples taken from *Miller* are precisely that: *examples.* Although in Hamling v. United States, supra, it was stated ". . . the particular descriptions there contained [in *Miller*] were not intended to be exhaustive," the majority insist upon holding that if not exhaustive of the constitutional limits, they are at least exhaustive of the limits of "sexual matters" in Article 527. If the Legislature can prohibit more than the specific exam-

ples of *Miller* (as it clearly can), and if the term "sexual matters" as commonly understood includes more than the specific examples of *Miller* (as it clearly does), then how can this Court say "sexual matters" in Article 527 means no more than the examples of *Miller* and call it statutory interpretation and construction? To so limit the statute to less than what it on its face includes, to less than what was clearly intended, and to less than what the Supreme Court says is constitutionally permissible, is *not* statutory interpretation and construction; it is judicial legislation.[1]

I remain convinced that the construction given to Article 527, and specifically to the term "sexual matters," in the previously unanimous opinion of this Court rendered February 13, 1974, is correct.

I cannot agree with the majority's erroneous decision to draft a new obscenity statute.

ROBERTS, J., joins in this opinion.

1. As long as the majority are busying themselves with redrafting the statute, why do they not also change the requirement that the material be utterly without redeeming social value to the new standard of lacking serious literary, artistic, political and scientific value?