**Evarasto Saldana SOTO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 47051.**

Court of Criminal Appeals of Texas.

Feb. 27, 1974.

Rehearing Denied Oct. 16, 1974.

Mike Aranson and Tony Kaufman, Dallas, for appellant.

Henry Wade, Dist. Atty., and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

Appellant in a trial before a jury was convicted of exhibiting obscene matter, to-wit, an obscene motion picture. Punishment was assessed at a fine of $1,000.00 and a term of six months in jail.

The record reflects that at all times pertinent hereto appellant was the manager of

the Studio Arts Theater in Dallas. On October 27, 1971, police officer Bailey, of the Alcoholic and License Bureau, formerly known as the Vice Control Bureau, of the Dallas Police Department, purchased a ticket and entered this theater to check complaints that obscene movies were being exhibited. He watched the films being shown from beginning to end, and made written notes regarding them. Later in his office he prepared an affidavit setting forth the prurient nature of the films, and requested a search warrant, and on the morning of November 2, 1971, he presented this affidavit to Justice of the Peace Cole. Judge Cole issued an order directing appellant to retain the moving picture at the theater pending an adversary hearing on the issuance of warrant. Art. 527, § 9, Vernon's Ann.P.C. The hearing was set for 2:00 P.M. on November 2. Notice of this order was served on appellant that same day at 11:11 A.M. That afternoon the magistrate issued the warrant, which recited that after notice to appellant and hearing afforded and after examining the affidavit and complaint, and hearing evidence, the court found that the film was obscene, and was being exhibited in violation of Article 527, V.A.P.C., and determined that probable good cause existed for the immediate issuance of a search warrant for its seizure. Art. 527, Sec. 9(f), (g), V.A.P.C.

About 4:00 P.M. on November 2, this warrant was served upon appellant, he was taken in custody, and the film was seized. On November 15, a hearing was had before Judge Cole with appellant and his attorney present and the film was shown. After the showing, it was returned to the custody of the police department. There are no further orders of the magistrate after the hearing of November 15.

Appellant's first ground of error is that there was insufficient evidence presented by the State as to all aspects of the case to warrant a conviction. Particularly, appellant raises three contentions: (1) That the State's expert witness Forrest Smith was not qualified to give "expert" testimony on the ultimate issue of obscenity; (2) that Smith was not qualified to give "expert" testimony on the constitutionally established tests required before a determination of obscenity could be rendered by the jury; (3) that the showing of the film without expert testimony would not be sufficient to sustain conviction.

Since the trial of this cause, and the filing of appellant's brief, the United States Supreme Court has handed down its opinion in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and a number of other obscenity cases, all cited in our recent opinion in West v. State, Tex.Cr.App., 514 S.W.2d 433 (No. 45,090, 1974). This latter opinion in *West* was delivered as a result of the Supreme Court having granted a writ of certiorari in West v. State, Tex.Cr.App., 489 S.W.2d 597, and having remanded the cause to us for further consideration in light of Miller v. California, supra, and the other recent decisions of that court cited in the 1974 opinion in *West*. In such opinion, we quoted from Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973) as follows:

"We . . . reject in Paris Adult Theatre I v. Slaton, *supra*, [413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446], any constitutional need for 'expert' testimony on behalf of the prosecution, or for any other ancillary evidence of obscenity, once the allegedly obscene materials themselves are placed in evidence. Paris Adult Theatre I, supra, 413 U.S., at 55–56, 93 S.Ct., at 2634–2635 (1973). The defense should be free to introduce appropriate expert testimony, see Smith v. California, 361 U.S. 147, 164–165, 80 S.Ct. 215, 224–225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), but in 'the cases in which this Court has decided obscenity questions since Roth [v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498], it has regarded the materials as sufficient in themselves for the determination of the question.' Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966)."

In the instant trial, the film was introduced in evidence, and shown in full to the jury. We have likewise reviewed this film on this appeal. It opens with a man and wife having sexual intercourse. They find that their sexual life is mutually unsatisfactory, and decide to take separate vacations. The remainder of the first reel, about 45 minutes in length, shows series of acts of oral sodomy and sexual intercourse, all in the nude, between the husband and other women, and the wife and another man.

The second reel, also about 45 minutes in length, shows individual acts of sodomy and sexual intercourse between a man and woman, and then an orgy of acts of oral sodomy and sexual intercourse between three men and two women, and also further acts of sexual intercourse and oral sodomy in which two couples participated all in the nude.

 The showing of the film is sufficient evidence for a determination of obscenity. West v. State (1974), supra. We fully agree with the verdict of the jury, and conclude from our review of the films that they meet the four conditions of "hard core" obscenity set forth in Miller v. California, supra, and in West v. State, (1974), supra.

The first ground of error is overruled.

By his second ground of error, appellant contends that he had the right under the First and Fourteenth Amendments to private possession of the allegedly obscene films. He argues that restricted distribution of obscene matter, adequately controlled, is not to be condemned, and says that Studio Arts Theater complied with all requirements necessary to produce protected, restricted distribution, pointing out the testimony of State's witness Bailey that (1) the theater is an enclosed theater that requires a fee for admission; (2) signs were displayed giving notice that the films

were of the X-rated category, for adults only, and (3) that any patron buying a ticket, who had not then discovered the nature of the film, may decide in the inner admission area whether the film might be offensive to him.

In support of his contentions, appellant relies on Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). However, as stated in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L. Ed.2d 813 (1971), in Stanley pornographic films were found in the accused's home, and the Court held that the State's power to regulate obscenity "does not extend to mere possession by the individual in the privacy of his own home." The Court in Reidel said:

"Reidel is in a wholly different position. He has no complaints about governmental violations of his private thoughts or fantasies, but stands squarely on a claimed First Amendment right to do business in obscenity and use the mails in the process. But *Roth* [1] has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today.[2] Stanley did not overrule Roth and we decline to do so now." See also Bryers v. State, supra.

 The record discloses that, like Reidel, appellant as manager of the Studio Arts Theater was doing "business in obscenity." In such capacity, he has no claims of protection under either the First or the Fourteenth Amendment. The ground of error is overruled.

Appellant next contends in his third ground of error that the film was unlawfully seized, and that his Fourth Amendment rights were violated since he did not obtain a prior adversary hearing, which also violated his Fifth Amendment rights. In his fourth ground he claims that he was

---

1. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Reference is made to West v. State, Tex.Cr.App., 489 S.W.2d 597, and Bryers v. State, 480 S.W.2d 712, for discussions of Roth.

2. See also Miller v. California, supra; West v. State, (1974), supra.

denied adequate notice of the adversary hearings.

Only a single copy of the film was seized, for the bona fide purpose of preserving it as evidence. At no time has appellant complained that the seizure prevented the continued exhibition of the film.

In our more recent opinion in West, supra, we cited Heller v. New York, 413 U. S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) as holding that there is no absolute constitutional right to a prior adversary hearing where allegedly obscene material is seized pursuant to a warrant, to preserve the material as evidence in a criminal prosecution.

■ However, in the instant case the record reflects that after Officer Bailey had viewed the film, and filed his affidavit with the magistrate, the latter issued an order to protect the film. The order expressly prohibited any interference with the exhibition of the film. Notice of the hearing was set for 2:00 P.M. that afternoon. After the hearing, when the magistrate heard evidence, he issued his warrant directing the film to be seized.

The action taken is authorized by Article 527, Section 9(d), V.A.P.C., and has been approved by this Court in West v. State, 489 S.W.2d 597; West v. State, Tex.Cr. App., 514 S.W.2d 433 (No. 45,090, 1974); Bryers v. State, 480 S.W.2d 712, and by the Supreme Court in Heller v. New York, supra, and Miller v. California. The third ground of error is overruled.

■ Since, as stated above, the appellant had no absolute constitutional right to a prior adversary hearing as we decided in West, (1974), supra, he is in no position to complain that his constitutional rights were violated concerning the notice given him of such hearing. Furthermore, Art. 527, Sec. 9(h) provides for a second adversary hearing *at the accused's request,* and such hearing was had before the magistrate two

weeks after the first hearing, at which appellant and his attorney were present. The films were shown, and again found to be obscene.

Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant contends that subsection (h) of Article 527, Section 9, V.A.P.C., is unconstitutional because it abridges his First Amendment right to have a judicial determination on the issue of obscenity of the film at a prior adversary hearing, and that his Fifth Amendment rights against self-incrimination are violated. He says that this provision of the statute is unconstitutional because to invoke it would have required appellant to make a legal conclusion as to the obscenity or non-obscenity of the allegedly obscene matter, when only a judicial determination on the issue of obscenity can yield such a conclusion.

Appellant relies upon Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1969), in support of his contention. There, the Supreme Court held unconstitutional as violative of the guaranties of the First Amendment a Maryland Statute providing for censorship of films which contained no provisions for judicial participation in the procedure which bars a film, nor even assurance of prompt judicial review. In so holding, the Court said:

"Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity *only if it takes place under procedural safeguards designed to obviate the dangers* of a censorship system."

The case is not applicable here. In the instant case involving criminal process the statute provides for the safeguards mentioned in *Freedman.*

■ Subsection (h) of Article 527, Section 9, V.A.P.C.,[3] which is attacked as un-

3. "In the event that a search warrant is issued and matter alleged to be obscene is seized under the provisions of this section, any

person alleged to be in possession of the said matter or claiming ownership of the matter at the time of its possession or seizure may

constitutional, provides for a subsequent hearing only upon the filing of a request therefor by the one possessing or claiming ownership of the matter in question. It provides, at the accused's option, for a judicial determination on the issue of obscenity. It does not require the accused to give evidence against himself.

We find no abridgment of appellant's constitutional rights in connection with this provision of the statute. The ground of error is overruled.

■ In a supplemental brief, appellant alleges error in the court's charge. No objection was raised to the charge in the trial court, and no special instructions were requested. There is nothing to review. Gipson v. State, Tex.Cr.App., 503 S.W.2d 796 (1974).

The judgment is affirmed.

Opinion approved by the Court.

file a notice in writing with the magistrate within 10 days of the date of the seizure alleging that the matter is not obscene and the magistrate shall set a hearing within one day after request therefor, or at such time as the requesting party might agree, and at such hearing evidence may be presented as to the obscenity of the matter seized and at the conclusion of such additional hearing, the magistrate shall make a further determination as to the obscenity or nonobscenity of the matter. If at such hearing the magistrate finds the matter not to be obscene, then it shall be returned to the person or persons from whom it was seized."