**William E. McKENZIE et al.**

v.

**Ted BUTLER et al.**

**Civ. A. No. SA–74–CA–315.**

United States District Court,
W. D. Texas,
San Antonio Division.

July 24, 1975.

Cecil W. Bain, San Antonio, Tex., for plaintiffs.

Nelson Atwell, Douglas C. Young and Keith W. Burris, Asst. Crim. Dist. Attys., San Antonio, Tex., for Ted Butler, Bexar County Crim. Dist. Atty., and Sheriff W. B. Hauck, Bexar County, Tex.

Edgar A. Pfeil, Asst. City Atty. of San Antonio, San Antonio, Tex., for defendants, Crawford B. Reeder, City Atty., City of San Antonio, Texas; Emil Peters, Chief of Police, City of San Antonio, Texas.

Bert W. Pluymen, Asst. Atty. Gen. of Tex., Austin, Tex., for John Hill, Atty. Gen. of the State of Texas; Dolph Briscoe, Governor of the State of Texas; and Kenneth Cook, Administrator of the Texas Alcoholics Beverage Com.

MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF DENIAL OF INJUNCTIVE RELIEF AND ORDERED JUDGMENT DISMISSING THIS CAUSE

JOHN H. WOOD, Jr., District Judge.

On the 23rd day of July, 1975, after the parties had appeared in person and by attorneys of record and announced ready for hearing of all matters before the Court, and after a full and complete evidentiary hearing, the Court is of the opinion that the injunctive and other relief sought by the Plaintiffs should be in all things denied, and in further support of its judgment of denial entered herein on July 24, 1975, simultaneously with the entry of said judgment, files the following:

## FINDINGS OF FACT

■■ 1. The evidence is undisputed and it is stipulated by and between the parties, and the Court finds that the three film versions of the motion picture "Deep Throat" all of which have been introduced into evidence and made part of the record of this cause are "obscene" and thereby would violate the Texas Obscenity Statutes (Section 43.21—formerly Article 527—; and Section 43.23, V.T.C.A.). Also under the holding of *West v. State*, 514 S.W.2d 433 (Tex.Cr. App.), 1974, under the Federal three judge court holding in *Universal Amusement Co. Inc., et al v. Coral Vance, et al*, U. S. District Court, Southern District of Texas, 1975, 404 F.Supp. 33, the obscenity laws, *supra*, are *not* Constitutionally "impermissible." Thus, the Texas obscenity laws have apparently passed Constitutional muster, and they permit communities, such as Bexar County and the City of San Antonio, to determine (under *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1974)) that material is obscene when it, "taken as whole, lacks serious literary, artistic, political, or scientific value." If the Plaintiffs, the public generally, or others believe that the obscenity laws as now declared Constitutional are too harsh, restrictive, undesirable, or contrary to popular public acclaim, the proper recourse is to prevail upon the democratically elected Texas Legislature to change these laws rather than to petition a life-tenured Federal Judge (who does not face the electors through the ballot box) to do so.

2. On November 11, 1974, in *Dexter v. State* (Cause Number 223,343), the film "Deep Throat" was declared obscene after a full and complete trial by jury in County Court at Law Number 3 in Bexar County, Texas.

3. Thereafter, on July 15, 1975, the Plaintiff Rape announced to the public through all branches of the news media that he was planning to commercially exhibit "Deep Throat" because "all he had to do was pay a $25.00 fine."

4. On July 15, 1975, the Plaintiff Rape began commercially exhibiting the film "Deep Throat" to the public in a bar known as the "Puss 'N Boots" in Bexar County, Texas. A cover charge of $5.00 was required to be paid by all patrons.

5. On July 15, 1975, an undercover Bexar County Sheriff's Deputy was dispatched to the Puss 'N Boots bar, paid the fee of $5.00 cover charge, and thereafter viewed the film "Deep Throat" which was being exhibited at the location in question.

6. On July 17, 1975, another Bexar County Sheriff's Deputy, in an undercover capacity, was dispatched to the Puss 'N Boots bar; he also paid a $5.00 cover charge and viewed the film "Deep Throat."

7. After reports had been filed by the two undercover agents, and based on these reports, two adversary hearings were conducted by Magistrates, with all parties being notified of the hearing, with opportunity to cross-examine, and some did, and based upon the Magistrates' findings of probable cause that the films were obscene, they were seized and retained in the custody of the local authorities in the community as possible evidence and illegal contraband.

8. Thereafter, the Plaintiffs demanded return of the films for the sole, only and exclusive purpose of showing the admittedly obscene film "Deep Throat" commercially to the public, also admittedly in violation of the obscenity laws of the State of Texas. It is the Plaintiffs' contention that the seizure of one similar or identical such film, as evidence in further criminal proceedings that may be instituted or subsequent showings of the same obscene film, prohibits local police authorities, on constitutional grounds, from seizing any further copies of the same film and requires them to copy the film and return these to Plaintiffs so they can continue to commercially display this obscene film to the public. In other words, seizure of one film requires the police authorities to permit the Plaintiffs to copy the seized copy and affords the Plaintiffs continuing and perpetual license to repeatedly violate the obscenity laws of the State of Texas ad infinitum by publically displaying copies of "Deep Throat", allegedly under the First Amendment protection of the United States Constitution.

9. No decision of the Federal or State Courts can be found or interpreted to so defeat and subjugate and totally undermine the constitutional reservation of the *"POLICE POWER"* which is exclusively reserved in the United States Constitution to the respective sovereign states.

10. Since the film "Deep Throat" has been declared obscene in an adversary jury trial in this community on November 11, 1974, and the Magistrates, after an adversary hearing involving the two films which have been admitted into evidence in this case, have found reasonable cause to find and conclude that these two films seized were also obscene, any further continued threat and design by Plaintiffs to show the same or virtually identical obscene material, warranted and justified the action the local authorities took in this case, and therefore the injunctive relief sought by the Plaintiffs must be in all things denied. Such a bold, flagrant and admittedly contumacious promise to perpetually violate the obscenity laws of Texas do not exhibit the "clean hands" usually required in a successful effort to obtain such equitable relief as injunction against State and local police authorities.

## CONCLUSIONS OF LAW

Based on the definitive decision of the Supreme Court in *Miller v. California, supra,* and its progeny, which defines a new obscenity test for the various states and which reaffirmed the legal proposition "that obscene material is not protected by the First Amendment," and particularly *Hicks v. Miranda,* —— U.S. ——, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) the injunctive relief sought by the Plaintiffs must be in all things denied. This latter case held:

"Not only was a state statute declared unconstitutional but also the injunc-

tive order, as amended September 30, 1974, required appellants to seek the return of the three prints of "Deep Throat" which were the subject of nine of the 12 counts of the amended criminal complaint still pending in the Municipal Court. *RETURN OF THE COPIES WOULD PROHIBIT THEIR USE AS EVIDENCE AND WOULD, FURTHERMORE, PREVENT THEIR RETENTION AND PROBABLE DESTRUCTION AS CONTRABAND SHOULD THE STATE PREVAIL IN THE CRIMINAL CASE.* Plainly, the order interfered with the pending criminal prosecution and with the enforcement of a state obscenity statute. In the circumstances here, the injunctive order, issued as it was by a federal court against state authorities, necessarily rested on federal constitutional grounds." (Emphasis supplied.)

\* \* \* \* \* \*

"Absent clear showing that appellees, whose lawyers also represented their employees, could not seek the return of their property in the state proceedings and see to it that their federal claims were presented there, the requirements of *Younger v. Harris* [401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669] could not be avoided on the ground that no criminal prosecution was pending against appellees on the date the federal complaint was filed. The rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference by federal courts,' *id.,* 403 U.S., at 43, 91 S.Ct. 750, particularly where the party to the federal case may fully litigate his claim before the state court. Plainly, 'the same comity considerations apply,' *Allee v. Medrano,* 416 U.S. 802, 831 [94 S.Ct. 2191, 40 L.Ed.2d 566] (Burger, C. J., concurring), where the interference is sought by some, such as appellees, not parties to the state case."

\* \* \* \* \* \*

"Unless we are to trivialize the principles of *Younger v. Harris,* the federal complaint should have been dismissed on the State's motion absent satisfactory proof of those extraordinary circumstances calling into play one of the limited exceptions to the rule of *Younger v. Harris* and related cases."

Thus, the Supreme Court has expressly held in a case involving various copies of "Deep Throat" that such copies can lawfully be retained by the local police authorities either as "evidence" or for later "destruction as contraband."

■ All too often, a life-tenure Federal Judge is petitioned to interfere with the official functions of the democratically-elected representatives of a sovereign state, and those complaints against local officials which involve an attempt to clearly minimize or dilute "police powers" of a state must be viewed and acted on with great caution, forebearance and restraint under *Younger v. Harris, supra.* It is the view of this Court that a Federal Judge, under such circumstances, must abstain from taking such disruptive action against local officials in the absence of a clear showing of a violation or impingement of a petitioner's First Amendment rights under the United States Constitution. Certainly, the public displaying of obscene movies is not a fundamental right of the Petitioners guaranteed by the First Amendment. To act and hold otherwise would be such unwarranted and unjustified interference by the federal government, through its Courts, as to be intolerable and the disruption of state and federal relations could cause utter chaos and render local enforcement not only cumbersome in some instances, but ineffective in others.

## JUDGMENT

It is, therefore, accordingly ordered, adjudged and decreed that Plaintiffs' petition and prayer for any and all injunctive relief is hereby denied and it is further ordered that Defendants recover of and from Plaintiffs all costs of court incurred to date and Defendants' Motion to Dismiss this cause is granted.