Gabrielli, J.
Our. major concern in the consideration of these cases is the constitutionality of certain of those sections of the Penal Law which deal with obscenity and pornography.
The appellants in each of these cases were convicted of misdemeanors because of their violations of section 235.05 of the Penal Law, which prohibits the promotion or production of obscene material. We have treated with the Heller case previously, deciding that the film “ Blue Movie ” was obscene within section 235.00 of the Penal Law, the statute which defines the meaning of obscenity (People v. Heller, 29 N Y 2d 319). We also decided in that case that it was proper for a judicial officer authorized to issue warrants, who had viewed the film and found it obscene, to issue a valid warrant for the film’s seizure as evidence in a prosecution against the exhibitor, without first conducting an adversary hearing on the issue of probable obscenity.
Heller was taken to the United States Supreme Court, and during its pendency that court handed down together five obscenity cases in which a revised obscenity test was adopted by a majority of five Justices (Miller v. California, 413 U. S. 15; Paris Adult Theatre I v. Slaton, 413 U. S. 49; United States v. 12 200-Ft. Reels of Film, 413 U. S. 123; United States v. Orito, 413 U. S. 139; Kaplan v. California, 413 U. S. 115).
Shortly following the decisions in those cases the Heller decision was handed down. Five Justices affirmed our determination of the procedural matter concerning the seizure of the film, but vacated our affirmance of defendant’s conviction on instructions to reconsider the substantive issues in light of the lead cases, Miller and Paris Adult Theatre I, already referred to, redefining the limits of obscenity prosecutions (Heller v. New York, 413 U. S. 483). Four Justices considered section 235.00 “ unconstitutionally overbroad ” and therefore invalid on its face (p. 495; and see Justice Douglas’s separate dissent at 413 U. S., p. 494).
The Buckley case is in this court for the first time. Defendants were convicted by a three-Judge Criminal Court panel for publishing and disseminating a tabloid type newspaper determined to be obscene entitled Screw (65 Misc 2d 917). Defendants, publishers and editors of the tabloid, were found guilty on each of six counts and were fiped $250 or 30 days imprison *319 ment on each count. Appellate Term for the First Department unanimously affirmed without opinion (72 Misc 2d 549) and leave to appeal to this court was granted. During the pendency of the Buckley case in this court the Supreme Court decided the afore-mentioned cases headed by Miller, and thus the merits of the prosecution against the Buckley defendants will also be considered in light of the Miller redefinition.
Our primary task is to determine the constitutionality of section 235.00 of the Penal Law in terms of whether it comports with the Miller decision and is sufficiently definite to satisfy the “ void-for-vagueness ” test. The question whether obscenity is within the protection of the First Amendment to the United States Constitution, or whether it should or should not be so protected, is not in this case. The Supreme Court and this court have regularly and consistently held traffic in obscene materials to lie beyond the limits of First Amendment coverage (Miller v. California, 413 U. S. 15, supra; Kois v. Wisconsin, 408 U. S. 229; United States v. Reidel, 402 U. S. 351; Roth v. United States, 354 U. S. 476; People v. Heller, 29 N Y 2d 319, supra; People v. G. I. Distrs., 20 N Y 2d 104, cert. den. 389 U. S. 905; People v. Richmond County News, 9 N Y 2d 578). As Chief Justice Burger said in the Paris Adult Theatre I case: “ The States, of course, may follow such a ‘ laissez faire ’ policy and drop all controls on commercialized obscenity, if that is what they prefer, just as they can ignore consumer protection in the marketplace, but nothing in the Constitution compels the States to do so with regard to matters falling within state jurisdiction. ’ ’ (413 U. S., at p. 64; emphasis as in original.) The fact is that the people of the State of New York, through their elected representatives, have chosen to curb the commercial promotion and sale of obscene material, a perfectly vadid exercise.
The second question is whether the published materiál falls within the statutory ban, a point already decided against the defendant by this court in Heller (29 N Y 2d 319, supra).
I
It is necessary at this point to undertake an analysis of Chief Justice Burger’s thesis as set forth primarily in the Miller and Paris Adult Theatre I cases. The Chief Justice first reviewed *320 the key decisions leading to the established test for obscenity (Roth v. United States, 354 U. S. 476, supra; Memoirs v. Massachusetts, 383 U. S. 413), that test being whether “ (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b), the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.” (set forth in the Memoirs case, 383 U. S., at p. 418).
The third element of the test thus laid down in Memoirs represented a tightening of the Roth requirements in that the material had to be “ 1 unqualifiedly worthless ’ ” before it could be labeled obscene (383 U. S., at p. 419), thus putting a burden on the prosecutor to prove the absence of any social value, a burden, said Chief Justice. Burger in Miller, ‘ ‘ virtually impossible to discharge under our criminal standards of proof ” (413 U. S., at p. 22). Since no adherents to the “ utterly without redeeming social value ” element of the Roth-Memoirs test remain on that court, that element was simply abandonéd in Miller and a new test was formulated, to wit: ‘1 The basic guidelines for the trier of fact must be: (a) whether ‘ the average person, applying contemporary community standards’ would find that the work, taken as a whole, appeals to the prurient interest * * * (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.”[1] (413 TJ. S., at p, 24).
Comparing this new test to the old test we find element ‘1 (a) ” substantially the same, i.e., the dominant theme must appeal to the prurient interest. The insertion of the average man into this element, and his application of contemporary community standards, does not represent any significant practical departure from the previous test, a point later discussed.
*321 Element “ (b) ” for the new test presents no practical change whatsoever. That the offensive sexual material should foe specifically defined by State statute in order iofoe prosecutable could Well have been a point left unstated since adequate definition is essential to any criminal statute.
Element “(c)” of the new test does effect a change, of course. In place of the “ utterly without redeeming social value ” test, the court has substituted much looser criteria. Now, the prosecutor need not prove the material “ unqualifiedly worthless ”. It will be sufficient to show that because of the predominant emphasis on the subject matter described in elements “ (a) ” and “ (b) ”, the-material, whether purportedly literary, artistic, political, or scientific, cannot be taken seriously as falling into any of those categories. To put am assessment of this test another way, the effectuation of a pretense as a serious work will not save the material from being found obscene if, in fact, it is dominated by patently offensive sexual material clearly geared for a market made up of those who Would have no use for it other than to satisfy their lewd, lascivious or morbid desires and cravings.
Chief Justice Bubgeb goes on in Miller to state that s
“ If a state law that regulates obscene material is thus limited [in accord with the new test above recounted], as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claim k when necessary. * * *
“ We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:
' “ (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
“ (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of tie genitals.” (413 U. S., at p. 25.)
*322 In footnote 6 to his opinion (p. 24) the Chief Justice points to the Oregon and Hawaii legislation as examples of adequately detailed statutes, but then states: “We do not hold, as Mb. Justice Bbennan intimates, that all States other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate.”
The final highlight in the Miller opinion concerns the contemporary community standards yardstick incorporated into the “ (a) ” element of the revised obscenity test. The necessity for a national standard as to what is patently offensive was abjured in favor of the application of “ community ” standards. We take pains to here declare that in determining whether any material is patently offensive or obscene, the community standard to be applied is a “ state ” standard. The connotation of the term “ community ” appears to have brought about a great deal of hand wringing by concerned libertarians who have tended to interpret the term as meaning local or provincial so as to open the door to censorship by local authorities or even constables who would be free to form their own notions as to what constituted patently offensive material. A fair reading of Chief Justice Burgee's opinion, however, does not lead to any such conclusion. In the Miller case both the prosecutor and the defense assumed that the “community standards” applicable to the factual determination of whether or not the subject material was patently offensive were those of the State of California. This State standard wás specifically approved in the Miller opinion (413 U. S., at p. 32)[2] and, when taken *323 together with the statement quoted supra, that assuming the State law complies with the new test constitutional rights are adequately protected by the safeguards of appellate review (413 ti. S., at p. 25), it becomes clear that the obscenity statute in any given State will be applied with, uniformity Statewide . through the construction given it by the appellate courts. “ Local ” law enforcement officers would no more be justified in seizing material that could not reasonably be construed as being hard core than they are, or would be in arresting a man for assault when only harsh words were spoken. And, as in the spurious assault case, an unreasonable obscenity arrest would quickly be recognized as such by the prosecutor or Judge in the application of the State standard. Probable cause is still the touchstone of valid prosecution. Of course, in close cases where convictions ensue, the corrective apparatus in the appellate route is just as available as it is in any other type of case. Finally, and as a practical matter later to be discussed, patently offensive sexual material subject to seizure has become so elemental in content as to be readily discerned when seen by an observer with the statutory definition in mind, as construed by this court.
The opinion in Miller is concluded as follows: “ In sum we (a) reaffirm the Roth holding that obscene material is not protected by the First Amendment; (b) hold that such material . can be regulated by the States, subject to the specific safeguards enunciated above, , without a showing that the material is 1 utterly without redeeming social value ’; and (c) hold that obscenity is to be determined by applying ‘ contemporary community standards,’ * * * not ‘ national standards.’ ” (413 TJ. S., at pp. 36-37; emphasis as in original).
The thrust of Chief Justice Bttbgeb’s opinion in the Paris Adult Theatre I case was to dispel the notion that pornography limited in availability to consenting adults only, should benefit from the protection of the First Amendment. It was also held that the prosecutor need not produce “ expert ” evidence .that the material is obscene when the material itself is placed in. *324 evidence since, quite obviously, it speaks for itself under the x‘ average person “ community standard ” requirements set forth in Miller.
n
What we obviously now have in the statute is a codification of the Both-Memoirs criteria enacted in 1967.[3]
Prior to the June, 1973 decisions headed by Miller this statutory scheme, or, more particularly section 235.00, the definitions portion with which we are primarily concerned, had consistently been held valid. A sampling of the cases includes Milky Way Prods, v. Leary (305 F. Supp. 288 [S. D. N. Y., 1970]) in which a three-Judge court, primarily concerned with whether there should be an adversary hearing before an arrest for obscenity, stated: “ The attack upon § 235 as void for vagueness is frivolous. Roth v. United States sustained the bare word * obscene ’ against a similar assault. See 354 U. S. at 491-492, 77 S. Ct. 1304. New York’s detailed definition renders its statute more *325 clearly impregnable ” (305 F. Supp., at p. 295). The, Milky Way decision was affirmed by the Supreme Court without opinion (397 U. S. 98).
In Overstock Book Co. v. Barry (305 F. Supp. 842 [E. D. N. Y., 1969]) the court discussed section 235.00 and specifically held that it was not void for vagueness and, ‘ ‘ if anything, is somewhat more narrowly circumscribed than what the Constitution requires ” (305 F. Supp., at p. 849),. This case was affirmed, the Court of Appeals reiterating the holding that section 235.00 was clearly in line with Both and therefore valid (436 F. 2d 1289, 1293 [2d Cir., 1970]).
Finally, in Astro Cinema Corp. v. Mackell (305 F. Supp. 863, 865 [É. D, N. Y., 1969], modified on procedural grounds 422 F. 2d 293) the court stated: “ Here * * ' * the substantive statute is as assuredly valid as a statute can be when it must be drafted in the light of the First Amendment. [Citations.] ”
Prior to June, 1973, then, no convincing argument had been made out against the validity of section 235.00 and one Federal decision after another had specifically declared the .statute’s constitutionality. If anything has occurred to change this state of affairs, it would have to be found in the decisions headed by Miller.
Since June, 1973, the Federal courts in New York have declined to entertain the question of the statute’s validity pending our decision in Heller (e.g., United Artists Corp. v. Proskin 363 F. Supp. 406).[4]
*326 in
The California statute treated in Miller contains the Roth? Memoirs criteria and for all intents and purposes is the same as our own (see n. 1 in the Miller decision, 413 U. S., at p. 16). Chief Justice Btjbgeb wrote: “ The case we now review was tried on the theory that the California Penal Code § 311 approximately incorporates the three-stage Memoirs test, supra. But now the Memoirs test has been abandoned as unworkable by its author and no Member of the Court today supports the. Memoirs formulation.” (413 U. S., at p. 23).
It is obvious that this was not a holding, however, that the California Statute was invalid. Had it been, our task in the instant case would have been pro forma. Bather, the case was sent back, as was the instant case, for evaluation in light of the whole Miller rationale. The Chief Justice made the obvious effort to point out that existing State statutes, presumably including California’s, “ as construed heretofore or hereafter ” (413 U. S., at p. 24, n. 6) could stand as valid. This effort is obvious because not once, but at least four times in the Miller opinion alone, reference was made to construction of the statute whatever form the statute (might take.[5]
We now, then, pass to the next question — whether our statute can be construed so as to effectuate the Miller requirements which sets up the “ average person ” as the theoretical individual whose sensibilities need be offended. We look to the “ ordinary adult ”. In either case the tests are concerned with the average man who has, of course, been a useful figure in our legal history, especially in the law of negligence, but also in the law of evidence where he is present, but unobtrusive. Miller holds that, the average man must apply contemporary community standards and, as we have already declared, this means a State standard which is definable by the State’s appellate courts. Our obscenity statutes have always been subject to such a uni *327 formly administered standard. Our State courts have always . been guided by our interpretation of the obscenity statutes, as with our interpretation of any criminal statute.
Next, we are of the opinion that subdivision 1 of section 235.00 sufficiently describes the conduct sought to be prohibited so as to satisfy the, void-for-vagueness test. It takes no dictionary reference to understand what the words “nudity ”, “ sex”, “ excretion ”, “ sadism ” or “ masochism ” mean. The last three terms, which are descriptive of certain kinds of conduct Whether portrayed live, printed or photographically, can be considered malum in se in terms of commercial exploitation. It is ludicrous and preposterous to suppose that a person dealing in such material would not understánd the prohibitions here. The terms “ nudity ” and “ sex ” are only malum prohibitum, of course, since each, to varying extents, could be commercially exploited for valid artistic, scientific, or literary ends. But surely, applying the sense of subdivision 1 of section 235.00 as a whole, there can be no doubt as to the narrow area sought to be prohibited. "When sex and nudity, and the other sorts of prohibited conduct for that matter, are exploited substantially beyond customary limits of candor and would, as the average man views it, be the predominant element in the material so as to appeal, again predominantly, to lascivious cravings, then there can be no doubt as to what is prohibited. What we are talking about is hard core pornography, We have applied the hard core pornography test with consistency both under former section 1141 of the Penal Law and under the current statute (People v. Kirkpatrick, 32 N Y 2d 17; People v. Fritch, 13 N Y 2d 119; People v. Richmond County News, 9 N Y 2d 578, supra). This court and the lower courts have ever been careful strictly to define the sort of material or conduct prohibited (see, e.g., People v. Bookcase, Inc., 14 N Y 2d 409 [reversal of conviction for selling materials to minors]; People v. Wendling, 258 N. Y. 451 [portrayal of characters in a play as coarse and vulgar, who employ coarse and vulgar language, not obscene]; People v. Stabile, 58 Misc 2d 905 [photographs of nudes, with no indication of sexual activity, did not amount to hard core pornography]). The fact of an occasional close case (see, e.g., People v. Carlos, 24 N Y 2d 865) serves as no basis for a declaration *328 that the penal statute, under which it is decided, is invalid. Hard core pornography consists of “ Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated [and/or] Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals ” (413 U. S., at p. 25).
Our task on this void-for-vagueness aspect is considerably eased since we only recently gave full consideration to a due process attack on subdivision 6 of section 240.35 of the Penal Law, the loitering statute (People v. Berck, 32 N Y 2d 567). A majority of us decided that the statute was invalid for the reasons . (1) that “ there are no commonly understood set of suspicious circumstances of which all citizens are aware and to which applicability of the statute is restricted ” (32 N Y 2d, at p. 570), and (2) that it also “ places virtually unfettered discretion in the hands of the police and thereby encourages arbitrary and discriminatory enforcement * * * Thus, whether or not a suspect is hauled off to jail for suspicious loitering depends, for all intents and purposes, upon the whim of the policeman ” (32 N Y 2d, at p. 571). Neither of those objections can successfully be directed against section 235.00, which is easily interpreted as pertaining to hard core pornography and the average man, whether he be the smut peddler or the policeman, knows, it when he sees it (Jacobellis v. Ohio, 378 U. S. 184,197). And, as interpreted, that statute has been given and will be given.only that narrow application. One surely can describe forbidden conduct by words which admit of varying, constructions depending on context, and then afix definite meanings to those words by construing them only in the light of the conduct sought to be prohibited. In other words, while the terms “ sex ” and “ nudity ” are not inherently pornographic and would not necessarily be pornographically dealt with, even if exploited commercially, the exploitation would be considered pornographic if its predominant appeal went to the prurient interest and it exceeded the customary limits of descriptive candor. This includes, and has been limited to, offensive depictions of ultimate sexual acts, masturbation, excretory functions-, lewd genital exhibition, i.e., exactly that sort of thing described in the Miller opinion (413 U. S., at p. 25).
*329 There is, therefore, no merit to the argument that the person dealing in such materials cannot know what is prohibited, or that what appeals to the prurient interest can be just, anything the policeman says it is; this latter aspect being especially clear in light of the State contemporary standard which we have announced.
There is no need, then, for a protracted discussion on the void-for-vagueness doctrine. In addition to the treatment of this doctrine in Berck (32 N Y 2d 567, supra) see also the pronouncements’ by the Supreme Court on the same point in Papachristou v. City of Jacksonville (405 U. S. 156); Colten v. Kentucky (407 U. S. 104); United States v. Petrillo (332 U. S. 1); and Chief Justice Burger’s adoption in Miller of this language from the case of Roth v. United States (354 U. S., at pp. 491-492, supra): “ 1 Many decisions have recognized that these terms of obscenity statutes are not precise. * * * This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. “. . . [T]he Constitution does not require impossible standards all that is required is that the language “ conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices ...” [citation] * * * “ * * * That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense ” ’ ”. (413 U. S., at pp. 27-28, n. 10.)[6]
And, of course, we recall the pronouncement of the three-Judge Federal court in Milky Way Prods, v. Leary (305 F. Supp. 288, 295 [S. D. N. Y., 1970], affd. 397 U. S. 98, supra) that “New York’s detailed definition renders its statute more *330 clearly impregnable [than the less detailed standard dealt with in Roth].”
The third aspect of the Miller test does not detain us long. The rejection of the “ utterly without redeeming social value ” test in favor of a .broader test based on lack of serious literary, artistic, political or scientific valúe, can hardly inure to the benefit of those dealing in the subject materials in terms either of due process denial or First Amendment infringement. In other words, since our statute remains more narrowly defined . than" those limits now set forth in Miller, defendants cannot be heard to complain. This third element is. merely another way of -emphasizing the point that the material must be wholly designed for a prurient interest market. In assessing this third element we are mindful that the material must be hard core pornography as stated in elements “ (a) ” and “ (b) ” and as construed by this court, which construction coincides with the examples given in Miller. Fdr. this reason alone any argument that the 'decision in Miller to drop the “ utterly without ” test wrecks section 235.00, is without any merit whatsoever. Not only is there no holding in Miller that a State may not utilise stricter standards than those allowed, but the presence of the “ utterly without ” element causes no alteration of the rest of the statute so that, taken as . a whole, it cannot be said to conform, as construed, to the Miller requirements insofar as those requirements set the limits of First Amendment protection.
Two out-of-State decisions to which our attention has been drawn incorporate a different view regarding the abandonment of the “ utterly without ” test. Thus, it is stated in United States v. Lang (Dist. Ct., Central Dist. Calif., July 18, 1973): “ The new test simply requires that the prosecution show, inter alla, that 1 the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.’ [Citation.] In short, the Court’s new test substantially changes the law of obscenity, and as a general proposition now makes it easier to convict the defendants. Therefore, to prosecute defendants under the judicially devised Miller definition of obscenity and to instruct the jury on it would, without fig leaves, be the functional equivalent of an ex post facto application of the law. This the due process clause forbids. Boule v. City of Columbia, 378 U. S. 347 (1964).” *331 (See, also, State v. Wedelstedt, Dist. Ct. Linn County, Iowa, Aug. 13, 1973.) .
Since, however, we do not construe section 235.00 to the permissible limits now allowed in Miller there can be no ex post facto application of the looser Miller criterion. The scope of the statute is no broader than it was before June, 1973, and remains a bit narrower than the allowable limits insofar as the third element is concerned, after June, 1973. Our statute, in effect, more than complies with the Miller limits as written and construed. It is well to here point out that it is within the province of the Legislature to determine whether the less stringent test of obscenity laid down in that case should now become the ultimate formula to be applied in New York.
It is true that a few State obscenity statutes have been held invalid in light of Miller. For example, in one California case the statute, which is much like ours, was voided (People v. Bloom, Superior Court, Los Angeles County, July 6, 1973) while in a later California case the statute was construed to meet the Miller criteria (People v. Eushat, Court of Appeals, Second List., Aug. 8, 1973). Other cases decided since Miller, brought to our attention by counsel, hold the various local statutes invalid. We might agree that expediency dictates a short memo-random to the effect that any attempt to preserve section 235.00 would constitute judicial legislation. This was apparently thought the better course in some of the post-Miller decisions since State Legislatures, perhaps including our own, will be quick to draft new statutes incorporating the Miller tests. However, we do have these two cases before us and possibly more in process under the current statute. We are not convinced it would be intellectually honest to follow the path of expediency when there is the venerable presumption of validity (People v. Scott, 26 N Y 2d 286, 291; People v. Kaiser, 21 N Y 2d 86, 103; People v. Epton, 19 N Y 2d 496, 505; Wiggins v. Town of Somers, 4 N Y 2d 215, 218) and when the statute can be construed to comport with the Miller rationale.
In sum, our obscenity statute is sufficiently specific and well •within the ambit of the lines laid down in Miller. ' Very simply put, it prohibits commercial exploitation of hard core pornography, a term, employing a State standard we have employed *332 and continue to employ, which does not go beyond those examples set forth in Miller and which, in fact, contemplates material of no redeeming value whatsoever.
IV
Nothing seems to have altered the content of “ Blue Movie ” since a year ago when it was found obscene by a majority of this court (29 N Y 2d 319). The short of it is that if “ Blue Movie ’•’ was obscene before June, 1973 under section 235.00, then, under the rationale we have outlined, it can be no less so now. Despite all the rhetoric, the practical tests for obscenity insofar as this court has always applied them, have undergone no change in light of the Miller decision. Unless the Legislature amends the statute,, as it is free to do, our tests will continue to be what they have been. The question in each case is — is. this i hard core pornography in the sense it emphasizes to a predominant extent sex acts of whatever sort between or among people, or lewd exhibition of genitalia? The question may be difficult to answer in instances where the material contains an abundance of pornography, but can also be considered as making a valid statement of some sort. If such content is really present then the work would not be utterly lacking in value, or, as under the Miller test, if such content is seriously present then, taken as a whole, it could not be banned.
The “ utterly lacking ” test was abandoned in Miller because of the difficulty in proving such an extreme. The clever pornographer need only infuse some social or political content into the work to escape successful prosecution. However, this court, as it must have when the Heller case was here before, has applied the “ utterly without ’’.test within the realm of reason. Thus, we found “ Blue Movie ” obscene even though the pornographic activities depicted were interspersed with some political and social dialogue. We cut through the form, as it were, to the substance and the substance of the film was and remains hard core pornography. The pretense at redeeming value has been discounted when, it clearly is injected as a safeguard to protect a work the focus of which is toward the prurient interest market.
There is no community standard problem in Heller. The movie was specifically found to be hard core pornography and *333 Presiding Judge Bixgel stated: “ Hard core pornography is obscene by any standard ”. Our affirmance of the Heller conviction should be reinstated.
The magazine Screw is also clearly obscene by any standard. The issues in evidence are crammed with photographs of naked men and women engaging in homosexual and heterosexual acts, in many instances with genitals prominantly and lewedly displayed. Drawings and cartoons, are also explicit, exaggerating sexual activity to preposterous degrees. Book and movie reviews are confined only to those works which deal with sex, the worth of a movie being measured by the degree of male erection it is likely to induce. The -advertising is no less egregious. The issues contain display ads for what used to be called stag films; sex paraphernalia such as dildoes are prominantly illustrated in detail; and personal ads soliciting male and female participation in sex acts of every conceivable sort ar,e written quite unambiguously. Many of the articles are totally sex oriented and are written in the most graphic terms. The use of all the most abominable dirty words is prevalent both in headlines and text. Indeed, it is hard to conceive of how a publication could reach any further lows in attempts to appeal to prurient interest.
The Per Curiam opinion of the Criminal Court Judges was primarily concerned with the u utterly without ’5 test (65 Mise 2d 917). The court noted that these issues do contain a “ sprinkling ” of nonobscene articles, but concluded that, taken as a whole, the magazine remained without value. The crucial factor, in addition to the depictions, and articles conceded by the defendant Goldstein as an affrontery to existing community standards, is the inclusion of the advertisements just noted. The net effect was capsulized as follows:
“ Such advertising, together with that soliciting the purchase of the aforesaid sex articles and devices certainly go substantially beyond ‘ the present critical point in the compromise between candor and shame at which the community may have arrived here and now ’ [citation], and degenerates to illegality the entire, publication, coloring also with the brush of obscenity even that sprinkling of articles which contain some social value.
*334 “ The fact that some of the articles in Screw are not obscene and may be legally innocuous does not necessarily mean that the publication has social value or importance. As Judge Friendly reminds us, truly pornographic material cannot be rescued by the inclusion of a few verses of the Psalms. (United States v. A Motion Picture Film [I Am Curious-Yellow], 404 F. 2d 196, 201.) ” (65 Misc 2d, at pp. 921, 922.)
This, of course, is the point made previously in respect to “ Blue Movie ”. The attempt to inject element^ of ordinary material will be considered a pretense when the material is otherwise predominantly hard core pornography, patently designed for the prurient interest market.
The courts below employed standards entirely in accord with applicable State standards, i.e;, the. question was simply whether this material is predominantly hard core. It assuredly is and Can hardly be treated differently from that material considered obscene by this court in People v. Kirkpatrick (32 N Y 2d 17, supra).
In each case, the order of the Appellate Term should be affirmed.

. Were the issue reached upon a trial, the question whether "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value ” must be ultimately determined by the triers of the fact only after the Trial Judge, in the absence of the jury and without disclosing to them his determination, has fully and independently resolved the issue as a preliminary matter of law against the accused.

. Chief Justice Bubgeb made this clear when he stated (413 U. S., at pp.. 32-34) that: “It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City. [Citations.] People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism of imposed uniformity. As the Court made clear in Mishkin v. New York, 383 U. S., at 508-509, the primary concern with requiring a jury to apply the standard of ‘the average person, applying contemporary community standards ’ is to be certain that, so far as material is not aimed at a deviant group, it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person -7-or indeed a totally insensitive one. [Citations.] We hold that the requirement *323 that the jury evaluate the materials with reference to ‘ contemporary standards of the State of California- ’ serves this protective purpose and is constitutionally adequate.”

. Section 235.00 of the Penal Law provides in pertinent part:
“ The following definitions are applicable to sections 235.05, 235.10 and 235.15:
“ 1. 1 Obscene.’ Any material or performance is ‘ obscene ’ if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially suspeetible audience.
“2. 1 Material ’ means anything tangible which is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound or in any other manner.
“ 3. ‘ Performance ’ means any play, motion picture, dance or other exhibition performed before an audience.
“4. ‘ Promote ’ means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same.”
Section 235.05 provides that:
“A person is guilty of obscenity when, knowing its content and character, he:
“1. Promotes, or possesses with intent to promote, any obscene material; or
“ 2. Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity.
“ Obscenity is a class A misdemeanor.”

. The Appellate Division, First Department, in Redliah v. Capri Cinema (43 A D 2d 27, 28) held that the provisions of CPLR 6330 were constitutional and well within the basic guidelines set forth in Miller. This statute authorizes the civil remedy of injunction to be used against “ matter of an indecent Character, which is obscene, lewd, lascivious, filthy, indecent or disgusting * * * or in any other respect [as] defined in section 235.00 of the penal law While we do not pass on the validity of CPLR 6330, we note that the Appellate Division made pointed reference to the statutory incorporation of section 235.00 in the CPLR provision and they then observed, in dictum (p.,30) that the Supreme Court had the Penal Law section before it in Keller, and “ had an opportunity to declare it unconstitutional. But it did not do so.”
In another case involving CPLR 6330 ,Mr. Justice Pmxnrc, at Special Term, Nassau County, in upholding the validity of a complaint, held that the presumption of constitutionality had not been overcome (Incorporated, Vil. of Lynbrook v. United Artists Corp., 75 Misc 2d 124).

. “ That conduct must be specifically defined by the applicable state law, as written or authoritatively construed” (413 U. S., at p. 24). "If a state law that regulates obscene material is thus limited, as written or construed ” (413 U. S., at p. 25), “' Hard core ’ sexual conduct specifically defined by the regulating state law, as written or construed” (413 U, S., at p. 27). And, finally, the material from footnote 6 just above quoted in the text,

. In Ginsberg v. New York (390 U. S. 629, rehearing den. 391 U. S. 971) Justice Brennan wrote: “The attack on subsection (f) is that the definition of obscenity ‘ harmful to minors ’ is so vague that an honest distributor of publications cannot know when he might be held to have violated § 484-h. But the New York Court of Appeals construed this definition to be ‘ virtually identical to the Supreme Court’s most recent statement of the elements of obscenity.’. [citations]. The definition therefore gives ‘men in acting adequate notice of what is prohibited ’ and does not offend the requirements of due process. [Citations.] ” (390 U. S., at p. 643.)