UNITED STATES of America, Plaintiff,

v.

VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE 1352, Defendant.

76 Civ. 1000.

United States District Court, S. D. New York.

May 5, 1976.

Robert B. Fiske, Jr., U. S. Atty., by Louis Corsi, Asst. U. S. Atty., New York City, for plaintiff.

Eric Litter, pro se.

Lawrence Raskin, pro se.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This *in rem* action was brought by the United States pursuant to 19 U.S.C. § 1305 seeking the forfeiture, confiscation and destruction of various allegedly obscene items imported into the United States and seized by officers of the United States customs.

Although the statute, while prohibiting the importation of "obscene" items, is silent on the meaning of obscenity, the Supreme Court has construed it as incorporating the standards enunciated in *Miller*. *United States v. 12 200–Ft. Reels of Film*, 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 2670, 37 L.Ed.2d 500, 507 (1973). Accordingly, the governing standards are 1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to prurient interest, 2) whether the work depicts or describes in a patently offensive way, ultimate sex acts, masturbation, excretory functions or the lewd exhibition of genitals, and 3) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller v. California*, 413 U.S. 15, 24–25, 93 S.Ct. 2607, 2614–15, 37 L.Ed.2d 419, 430–31 (1973). Having inspected the items in question, I find that they all fall within this definition of obscenity.

Only with respect to items # 9 and # 9A, a copy of the Swedish magazine *Private* and two advertisements for it, have claimants appeared in court to contest forfeiture. In its advertising, *Private* describes itself as:

. . . an honest portrayal of the new Swedish concept of sexual freedom. The frank picture-material, articles and reports show in an unique manner the emancipation and honesty towards sex as enjoyed by Swedish women. There is an interest in PRIVATE for all; whatsoever their sexual tastes. Erotic art, lesbianism, exhibitionism, masturbation, troilism, sex orgies, fellatio, cunnilingus, closeups, orgasm, transvestism, etc. The original PRIVATE photographs are refined, inspiring and aesthetic showing many varied unexpurgated coital positions.

Although only its publisher would refer to most of its photographs as being "refined, inspiring and aesthetic," this description gives some indication of its contents. It features numerous photographs of largely or entirely naked men and women engaged in a wide variety of ultimate and intermedi-

ate sex acts, with a special emphasis upon close-up shots of acts of oral sex and sexual intercourse. These photographs are translated into appropriately obscene verbal images by the accompanying text—ostensibly written in the form of stories and articles.

Within the pornographic hierarchy, as manifested by the various items under consideration, *Private* is near the top. Its photographs, all in color, are of good quality, employing in some instances attractive Swedish scenery as a backdrop. More importantly, it eschews any reference to children, animals or acts of sado-masochism. Nonetheless, it is clearly obscene under the *Miller* standard. As the editor himself writes in this issue, *Private's* "erotography" is limited only by the considerably more liberal laws of Sweden. There can be no serious question that it appeals to prurient interest and that, taken as a whole—or even in isolated parts—it lacks serious literary, artistic, political or scientific value. And without a shadow of subtlety, it depicts acts of masturbation, oral sex and sexual intercourse, focusing exclusively upon the apparent sexual desires of the models. The advertisements, because they feature the covers of past issues of *Private*, are similarly obscene.

The argument of the claimants appears to be that community standards in the Southern District of New York are at such a level that no portrayal of sexual acts between men and women, at least in the absence of sado-masochistic overtones, can be considered patently offensive. Although the Supreme Court has hinted that public opinion with respect to pornography is more tolerant in New York City—or Las Vegas—than in Maine or Mississippi, *Miller v. California*, 413 U.S. at 32, 93 S.Ct. at 2619, 37 L.Ed.2d at 435, claimants confuse greater tolerance with the total abandonment of the deeply engrained community sense that it is patently offensive to exploit normally private acts for the purpose of appealing to prurient interest.

In support of their position, claimants point to 1) the widespread distribution of *Screw* magazine in the New York area,* 2) the fact that *Screw* has received a second class mail permit from the post office, and 3) the fact that *Private* itself is available for purchase in Times Square.

These specifics are, however, unpersuasive. *Screw* has been held obscene by the New York Court of Appeals. *People v. Heller*, 33 N.Y.2d 314, 352 N.Y.S.2d 601, 307 N.E.2d 805 (1973). The fact that it may still be available for sale is thus more indicative of the difficulties of enforcement and the persistence of its publisher than of laxity in community standards. And the post office, in granting second class mailing permits, is not authorized to act as a censor. *Hamling v. United States*, 418 U.S. 87, 126, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590, 625 (1974). Finally, the fact that *Private* itself is available for sale is not, in the absence of proof that the material enjoys a reasonable degree of community acceptance, highly probative on the question of community standards. *Hamling v. United States*, 418 U.S. at 125–126, 94 S.Ct. at 2911–12, 41 L.Ed.2d at 625; *United States v. Manarite*, 448 F.2d 583, 593 (2d Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971).

At a more fundamental level, the problem with claimants' argument is that it equates community standards with the most pornographic items available for sale. Were this true, a community would never be able to purge itself of obscene items currently in existence, and any practical or legal difficulties involved in the enforcement of obscenity laws would have to be interpreted as evidence of community acceptance. The demand for pornography, whatever its economic significance, is not an adequate measure of the standards of a community which extends far beyond the confines of Times Square.

At its core, claimant's position appears to be that it is unfair to confiscate an import-

---

* The copy of *Screw* proffered at the hearing was purchased within two blocks of this Courthouse.

ed copy of *Private* when the same and similar publications are locally available for purchase. However, a failure to comprehensively enforce obscenity laws is not adequate ground for vitiating such enforcement efforts as are being made.

In accordance with the above, a judgment of forfeiture will be entered.

So Ordered.