■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CALBUD, INC., Also Known as MAYFAIR THEATRE, and MARVIN MUCHNICK, Also Known as BUDDY MARCH and CALVIN YOUNG, et al., Respondents.—Appeal by the People from nine orders of the Supreme Court, Queens County, each dated March 7, 1978, which dismissed indictments charging the defendants with obscenity in the second degree. Orders affirmed. The defendants were indicted for the crime of obscenity in the second degree in that they "promoted and possessed with intent to promote obscene * * * motion picture[s]". In instructing the Grand Jury, pursuant to CPL 190.25 (subd 6), the Assistant District Attorney referred, *inter alia,* to the term "obscenity" as: "Any material or performance is obscene *if the average person applying contemporary community standards* would find that considered as a whole, its predominant appeal is to the prurient interest in sex, * * * Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience." (Emphasis supplied.) In our opinion, the Assistant District Attorney's instructions were inadequate in that he failed to advise the Grand Jurors that in determining whether any of the material before them is patently offensive or obscene, the "contemporary community standard" to be applied is a "state standard" (see *People v Heller,* 33 NY2d 314; *People v Nitke,* 45 AD2d 543; cf. *People v Ciampa,* 57 AD2d 932, 935-936). By employing the term "community standard" without also stating that the term was Statewide in scope, the Assistant District Attorney afforded the Grand Jurors individually and collectively an opportunity to consider the term in light of standards held in a relatively circumscribed area. Without doubt the defen-

dants were entitled to the utmost protection, made available by the determination of the United States Supreme Court in *Miller v California* (413 US 15), and the Court of Appeals of this State in *People v Heller (supra)*. These decisions place upon the individual juror the duty to disregard the level of tolerance in his community toward pornography, and instead to make an objective determination as to what constitutes the State-wide standard. The contention of the dissenter that an instruction to a Grand Jury prescribing a "community" rather than a "State-wide" standard could not, under, *inter alia, People v Heller (supra)* invalidate an indictment otherwise based on legally sufficient evidence is belied by Judge Gabrielli's strong admonition in *Heller,* on behalf of the whole court (p 322): *"We take pains to here declare that in determining whether any material is patently offensive or obscene, the community standard to be applied is a 'state standard'."* (Emphasis supplied.) Therefore, since the Assistant District Attorney did not instruct the jury that a "state" community standard must be considered when determining whether material is obscene, Criminal Term properly dismissed the indictments (see CPL 210.35, subd 5). The requirement that petit jury instructions contain an adequate statement of the law to guide the jury's determinations, applies with equal force to Grand Jury instructions *(People v Mackey,* 82 Misc 2d 766, 770). Where the failure to properly instruct the Grand Jury results in prejudice to a defendant, a dismissal of the indictment is required *(People v Cunningham,* 88 Misc 2d 1065, 1082; *People v Ferrara,* 82 Misc 2d 270). Titone, Rabin and Hawkins, JJ., concur.

Martuscello, J. P., dissents and votes to reverse the orders and reinstate the indictments, with the following memorandum: To be sure, *People v Heller* (33 NY2d 314, 319) requires the application of a State-wide standard in determining whether any material is obscene under the test in *Miller v California* (413 US 15). However, it would be a misreading of both those cases to suppose that an instruction to the Grand Jury which prescribed a "community" rather than a "State-wide" standard could invalidate an indictment otherwise based on legally sufficient evidence. While *Miller* expressly approved the State-wide standard, the United States Supreme Court has also made it abundantly clear that such a standard is not essential to a constitutional definition of obscenity *(Hamling v United States,* 418 US 87, 105). More to the point, the concerns which motivated the New York Court of Appeals to insist on a broad-based "community" bear only the most tenuous relationship to the kind of defects which ordinarily require the dismissal of an indictment. Certainly that connection is not compelling enough to warrant dismissal here. The primary purpose of the State-wide standard is to protect the First Amendment right of free expression from domination by those whose views on obscenity differ significantly from those of the "average person" in this State. Such protection is not automatic, however; at best the instruction acts as an admonition to the juror that he may not narrowly rely on his own view of what is obscene, but that he must address himself to the whole range of attitudes, *as he perceives them* (cf. *Pinkus v United States,* 436 US 293, 300-301). The degree to which the jurors' perceptions actually reflect a meaningful State-wide standard necessarily remains veiled in the secrecy of their deliberations. The United States Supreme Court has held that "as a matter of constitutional law and federal statutory construction [the effect of *Miller v California, supra],* is to permit a juror sitting in obscenity cases to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case" *(Hamling v United States, supra,* p

105; see, also, *Smith v United States,* 431 US 291). I find it significant that the Supreme Court has never spelled out a formula for the juror to ascertain the applicable community standard. Indeed, in such a culturally diverse State as our own, it is difficult to see how even the educated juror can reconcile so many conflicting values and attitudes into a single standard. Faced with such a task, I believe the ordinary juror would tend to conclude that his own feelings on obscenity accurately reflect the State-wide norm, and judge the materials before him accordingly. I conclude, therefore, that in *People v Heller* (33 NY2d 314, *supra)* the Court of Appeals never intended to require jurors to *formulate* a State-wide standard before deciding whether a given work is obscene; "The best that anyone can do is to give his or her personal reaction to it" *(United States v Various Articles of Obscene Mdse., Schedule No. 1303,* 562 F2d 185, 189-190). Rather, the intention was to provide a touchstone for the appellate courts to ultimately determine whether, in a given case, the constitutional right of free speech has been abridged *(People v Heller, supra,* p 323). Such a rationale is entirely consistent with the Supreme Court's assertion in *Miller v California* (413 US 15, 24-25, *supra),* that although the obscenity criteria were designed primarily for the "trier of fact", constitutional rights would be "adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary". It is equally clear that under *People v Heller (supra,* p 323) the definition of "hard core" pornography is the standard which must guide the appellate courts in drawing the line between protected speech and obscenity. Thus, whether the instant indictments must be dismissed turns ultimately on the character of the evidence presented to the Grand Jury, and not on the accuracy of the Assistant District Attorney's instructions. There is no indication that the indictments were based on legally insufficient evidence; the Trial Judge dismissed them solely on the basis of the inaccurate instruction. Even if the evidence was insufficient, it is well established that there is no constitutional right to an indictment based on legally sufficient evidence (see *Matter of Miranda v Isseks,* 41 AD2d 176, 178, quoting *Costello v United States,* 350 US 359, 362). It would, of course, be incorrect to assert that an erroneous instruction on the law could never render an indictment invalid (see, e.g., *People v Mackey,* 82 Misc 2d 766). However, in view of the unpredictable effect of instructing the jurors to apply the State-wide standard, I am convinced that the effect of the error on this Grand Jury's deliberations was so minimal as to eliminate the possibility of fatal prejudice (cf. *People v Percy,* 45 AD2d 284; CPL 210.35, subd 5). Moreover, assuming that the Grand Jurors returned these indictments after applying a local New York City standard (which, if anything, is more tolerant of pornography than is the "State-wide" standard), resubmission with an instruction on the stricter State-wide standard would, logically result in the indictments again being returned. Furthermore, there is no allegation of facial or jurisdictional defects which would render the indictments invalid (see CPL 210.25, subds 1, 2). We would also do well to remember that had the defendants' motion to inspect the Grand Jury minutes been denied and the case brought to trial, the defendants would have been barred from attacking the indictments, upon appeal from the ensuing judgments of conviction based upon legally sufficient trial evidence (see CPL 210.30, subd 6). Subdivision 6 stands for the principle that an indictment ought not be dismissed for technical reasons when the evidence is otherwise sufficient to sustain a conviction. While this is not directly applicable to the case at bar, its rationale applies with equal force to these indictments, which are clothed with a presumption

of legality and sufficiency (see *People v Glen,* 173 NY 395). The sensibility of this approach strikes home when one considers the practical consequences of a dismissal. The instant case involves a sizeable number of individual and corporate defendants variously located in one of the largest counties of New York City. Nine indictments were returned after a presentation which spanned some three months and which likely entailed laborious planning to accommodate the schedules of numerous witnesses. To my mind, it would be an injudicious use of public funds and prosecutorial manpower to require the District Attorney to duplicate these efforts by resubmitting this case to another Grand Jury. This is doubly true when one considers that the original instructions to the Grand Jury were free from constitutional infirmity, the proceedings were not irregular in any other respect, and the discrepancy involved technical language which derives its ultimate usefulness in the hands of the Trial Judge and the appellate courts. The power of review remains conspicuously intact in the instant case, as indeed does the defendants' most basic procedural right, a trial by a jury. At trial, the defendants will be entitled to an instruction which charges the jury in precisely the language required by the laws of our State. To dismiss the indictments and require resubmission because of a prosecutorial "slip of the tongue" is too drastic under the circumstances, and is an exaltation of form over substance.