OPINION OF THE COURT
Alois C. Mazur, J.
The defendant was charged with violating subdivision 1 of section 235.05 of the Penal Law upon an accusatory instrument filed with this court on January 25, 1979. The accusatory instrument alleged that the crime(s) took place on June 16 and June 30, 1978 (some seven months prior to the initiation of the criminal proceedings). Defendant responded to a summons issued from this court calling for his appearance in court for arraignment on February 15, 1979, at which time he was duly arraigned. (Almost eight months from the occurrence of the first alleged crime.)
The criminal charges arose out of the purchases, from the defendant and by the complainant, of a magazine entitled The Erotic Adventures of Casanova on June 16, 1978 and a magazine entitled Sugar-Number One-All Color on June 30, 1978.
Made a part of the accusatory instrument was a "Supporting Statement” of the reviewing Judge who stated that he reviewed the magazines in question, focusing his attention on the question of obscenity, and determined "that there is probable cause to believe that the * * * material is obscene, as defined in Penal Law Section 235.00, Subd. 1” (emphasis supplied).
The court hastens to point out that the afore-mentioned supporting statement is dated January 25, 1979 and that no particular reference is made as to the actual reviewing date of the material and no particular determination was articulated that the material in question was obscene by the standards of the community on June 16, 1978 and/or June 30, 1978. One can reasonably presume, however, that the material in question was, at the very least, reviewed for the purposes intended on January 25, 1979 and that a generalized determination was made on said date (i.e., without reference to the June, 1978 dates).
Both orally and in writing, the defendant, beginning with the date of arraignment on February 15, 1979, made a series of motions to dismiss the charges against him for various and *456 many reasons, including the claimed unconstitutionality of the statute, the unreasonable preaccusation delay, and the deprivation of defendant’s rights under the First, Sixth and Fourteenth Amendments of the United States Constitution and like and similar provisions in the Constitution of the State of New York.
In view of the great lapse of time between the alleged occurrence of the crime(s), it should be pointed out that this court was at all times ready to provide defendant with a speedy trial from the date of arraignment. However, at the time of arraignment, and on several occasions thereafter, it was stipulated to between the People and the defendant, that a trial and any other hearings or considerations be postponed pending the resolution of the issue of the constitutionality of article 235 of the Penal Law, which issue was at that time winding its way through the various appellate courts.
The determination by the Court of Appeals expected by the defendant in another case did not occur and did not render these proceedings and considerations moot.
Both the defendant and the People specifically agreed that, where the question of lapse of time or delay is pertinent herein, consideration be made only up to the date of February 15, 1979, and no subsequent time.
However, as the court views this entire matter, there is more involved than merely the question of the lapse of time between the alleged promotion, or possession of the alleged obscene material (to wit: June 16, 1978) and the date of arraignment (i.e., preprosecutorial delay).
Time is important, yes. But time herein is to be a first or primary consideration because nowhere is it sufficiently alleged that there was a probable cause to believe by appropriate judicial review that on June 16 and/or June 30, 1978 the material in question was obscene; nowhere is it sufficiently stated that the material in question was reviewed in relation to a time when the average person, applying contemporary community standards, would find that the material, taken as a whole, appealed to prurient interest.
The word “contemporary”, so very important in obscenity cases (see Miller v California, 413 US 15; Penal Law, § 235.00, subd 1), cannot be loosely interpreted. It can hardly be interpreted to be synonymous with “historically”, or even with the phrase “within the past seven months.” “Contemporary” *457 means "existing during the same time; coincidental; simultaneous.”
For the word "contemporary” to be broadened to include a period of even seven months would, in the everchanging and quickly changing world we live in, allow the prosecution to wait for an opportune time to prosecute; to wait for opinions, views and standards — so easily changed by mass media, rapid communications and occurrences of events — to change. (Incidentally, the prosecution might even be tempted to wait for a change in the Judges assigned from time to time to review material on the issue of probable cause. And, as with the average man, a Judge’s perception of the community standards may change, or remain constant or in keeping with the attitudes and perception of the prosecution.)
And views, opinions, tastes and attitudes do indeed change rapidly. All one needs to do is to consider the Gallup Polls or even the esteem or lack of esteem a President or a Governor are held by the public within a period as short as a month!
Changes in the intellectual and moral climate of society — as well as changes in the opinions and perceptions of the Judge or juror who may ultimately consider them — are doubtless due to the changing views and findings of specialists, including religious and educational leaders. That these changes may be sudden, may doubtless be due to the effects of mass media», rapid modern communications and mobility of the population. What may well have been consonant with mid-Victorian morals — existing or revived from time to time, person to person, or place to place — does not answer the perception, understanding, standards of a given time and in a given community. (Especially when that "community” must be interpreted to be State-wide.)
The Rosetta Stones for interpreting obscenity statutes at present seem to be the cases of Miller v California (413 US 15, supra) and People v Heller (33 NY2d 314) and these cases stressed the importance of the phrase "community standards” because, presumably, no issue arose requiring a need to interpret the meaning or importance of the word "contemporary”.
Nevertheless, the word "contemporary” is mentioned as a necessary element for consideration, albeit in passing, in the above-cited cases. Also the word "contemporary” is a specific legislative modifier of the phrase "community standards” in New York’s definition of the word "obscene”. (Penal Law, § 235.00, subd 1.)
*458 It is the view of this court that "State statutes designed to regulate obscene materials must be carefully limited” (Miller v California, 413 US, at pp 23-24); that "[pjrobable cause is still the touchstone of valid prosecution” (People v Heller, supra, at p 323); that probable cause be found and alleged factually for all the elements of obscenity, including for the word "contemporary” (especially when such a finding cannot be inferred from the facts alleged in the accusatory instrument or as a result of the lapse of seven months from the time of the purchase of the alleged obscene material and the time of the mere review of the material by a Judge).
Thus, it is the decision of this court that the accusatory instrument herein is insufficient because it fails to allege facts and probable cause as to each and every element required by law.
This court, however, feels compelled to go further and state an additional and/or alternative reason why the prosecution of this matter must be finally dismissed. This is done in order to afford the People and the defendant an opportunity to have the principal issues raised by the motions herein decided, heard or reviewed as expeditiously as possible and in order to avoid a tedious, costly, time-consuming winding of this case through the appellate courts on a "piece-meal” basis.
This court maintains that even if the accusatory instrument is loosely interpreted as having alleged all the facts and elements of the offense(s) and as having informed the defendant sufficiently of the nature of the offense(s) against him, the delay involved herein is violative of defendant’s due process rights requiring a dismissal.
This court recognizes that this prosecution was instituted by the People well within the Statute of Limitations and and that the People have great power to institute a prosecution anytime within the limitations period.
This court further recognizes the fact that in some other type of cases courts have allowed longer preaccusation delays for more serious offenses.
However, this court is satisfied that dismissals for unreasonable delays are not regulated by reference to a calendar, or a counting of specified days, months or years. The controlling word in dismissals for delays in prosecution is the word "unreasonable”. And what is "unreasonable” is determined from all the circumstances, including the very nature of the case itself.
*459 It is already settled that in this State that we have never drawn a fine distinction between due process and speedy trial standards; that unreasonable delay in prosecuting a defendant constitutes a denial of due process; that an untimely prosecution may be subject to dismissal even though (as here) the defendant was not formally accused, restrained or incarcerated for the offense; that our State’s due process requirement is broader than the speedy trial guarantees under CPL 30.20 or 30.30; that in some cases our State rule is less rigid in its application than the due process recognized under the Federal Constitution; that in appropriate cases dismissals for unreasonable delay can be had without a showing of prejudice to the defendant; that the People have the burden of establishing good cause for delays. (As to all these matters, see People v Singer, 44 NY2d 241; People v Staley, 41 NY2d 789; People v Winfrey, 20 NY2d 138.)
In the instant matter the People had an opportunity to offer a reason for the delay. The essential explanation given was that "the State of the New York obscenity law was unsettled in that three Buffalo City Court Judges had declared the law to be unconstitutional.”
No explanation was offered indicating an "investigative” motive for the delay. As a matter of fact, no such reason could logically be offered because, in fact, this very defendant was involved in one of the cases involved in the appeal of the unconstitutionality issue (see People v Ilardo, 97 Misc 2d 294, involving a purchase of an alleged obscene magazine on May 10, 1978 and which decision reversed the unconstitutionality ruling on November 15, 1978, almost two and one-half months before an accusatory instrument was filed with this court on the matter herein).
Further, in regard to the tendered explanation, it should be noted that, in another case, an accusatory instrument, together with a judicial finding of probable cause as to obscenity, was filed with this court by the same complaining witness and against the same defendant on June 16, 1978, the very date of the first purchase of the magazines herein involved.
Thus, given the fact that there are 12 Judges in this court, not all of whom held the same views concerning the unconstitutionality of the statute and givén the fact that the prosecution did manage to have charges against this very defendant expeditiously filed and processed for alleged violations contem *460 porary with the one’s herein involved, the only explanation given by the prosecution appears to be unreasonable.
In addition, even if we assume the tendered explanation not to be sham, the more reasonable approach would be to file the charges timely and to proceed expeditiously and orderly. In this way, at least, the legal and constitutional issues raised could be determined more expeditiously (perhaps joined) and by the same Judge. (Thus avoiding possible conflicting determinations by Judges of the same level.)
Society, as well as the defendant, has an important interest in assuring prompt prosecution of those suspected of criminal activity (People v Johnson, 38 NY2d 271, 276; People v Staley, 41 NY2d 789, 792, supra) where, as here, the charges obviously involved no investigative work, no real explanation for delay, no felony charges, no claimed pandering to youths or unsuspecting adults, no difficulty in obtaining evidence or to arrest; and where, as here, the very nature of the charge involves "time”, or a "contemporary” standard, a preaccusation delay of some seven months and a total delay of almost eight months before arraignment is unreasonable and violative of defendant’s due process rights and even the public’s inherent right to prompt prosecution of suspected criminal activity.
Whereas, for reasons of insufficiency of the accusatory instrument and, in the alternative, for the reasons above indicated, the accusatory instrument is dismissed and the defendant discharged.