THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NORTH STREET BOOK SHOPPE, INC., Appellant.

Third Department, July 7, 1988

APPEARANCES OF COUNSEL

*Learned, Reilly & Learned (Thomas E. Reilly* of counsel), and *William E. Seekford* for appellant.

*Gerald F. Mollen, District Attorney (Kevin P. Dooley* of counsel), for respondent.

**OPINION OF THE COURT**

YESAWICH, JR., J.

This appeal stems from defendant's sale of two sexually explicit magazines and resultant conviction of two counts of obscenity in the third degree (Penal Law § 235.05). An investigator with the District Attorney's office had purchased the magazines, classified by defendant's sales clerk as "hard core", on the pretext that they were to be a gag gift for a friend who was about to be married. The primary issue on appeal is the constitutionality of Penal Law § 235.00 (1) and § 235.05. In addressing that issue it bears repeating that statutes enjoy a presumption of constitutionality and that " 'unconstitutionality must be demonstrated beyond a reasonable doubt' " *(Maresca v Cuomo*, 64 NY2d 242, 250, *appeal dismissed* 474 US 802, quoting *Wiggins v Town of Somers*, 4 NY2d 215, 218).

In seeking a reversal of its conviction, defendant asserts first that the definition of obscenity in the Penal Law is vague to the point of denying it due process as guaranteed by NY Constitution, article I, § 6. The three-part definition of obscene

found in Penal Law § 235.00 (1)* is a codification of the criteria set forth in *Miller v California* (413 US 15, 24), and is very similar to the pre-*Miller* definition of obscene upheld on the void-for-vagueness attack launched in *People v Heller* (33 NY2d 314, 327-329). In our view, the current definition, as its predecessor was, is "easily interpreted as pertaining to hard core pornography" *(supra,* at 328). The current definition of obscene in Penal Law § 235.00 (1) differs from that approved in *Heller* in only two relevant respects: (1) it incorporates the yardstick of "contemporary community standards" as discerned by the "average person", and (2) it reinterprets "utterly without socially redeeming value" (Penal Law § 235.00 [1] [former (c)], as added by L 1967, ch 791, § 32) as lacking "serious literary, artistic, political, and scientific value". The former change clearly makes the definition less vague by providing a reference point. As for the latter, the breadth of the terms employed works in a defendant's favor. Moreover, the very use of those terms by the United States Supreme Court in defining obscenity has been deemed authority for the proposition that they are not impermissibly vague *(see, People v Illardo,* 48 NY2d 408, 415).

Defendant also claims that New York's obscenity law violates free speech rights under NY Constitution, article I, § 8. "[I]t is now established doctrine that obscene matter falls outside the scope of the First Amendment [to the US Constitution]" *(supra,* at 414, citing *Roth v United States,* 354 US 476, 491-492). Defendant would have us conclude that the parallel provision of NY Constitution, article I, § 8 provides greater protection than its Federal counterpart. To justify such independent broader State protection, defendant must establish a historical basis for making the distinction being advanced or demonstrate that a fundamental State concern for doing so exists *(see, People v Kohl,* 72 NY2d 191; *see generally, People v P. J. Video,* 68 NY2d 296, 302-303, *cert denied* 479 US 1091). To that end, defendant points out that article I, § 8 first

---

* Penal Law § 235.00 in relevant part reads: "1. 'Obscene.' Any material or performance is 'obscene' if (a) the average person, applying contemporary community standards, would find that considered as a whole, its predominant appeal is to the prurient interest in sex, and (b) it depicts or describes in a patently offensive manner, actual or simulated: sexual intercourse, sodomy, sexual bestiality, masturbation, sadism, masochism, excretion or lewd exhibition of the genitals, and (c) considered as a whole, it lacks serious literary, artistic, political, and scientific value."

appeared in New York's Constitution in 1821, long before New York enacted legislation restricting dissemination of obscene material (L 1868, ch 430). But the same can be said of the corresponding Federal protection of free speech, which, as already noted, does not prevent regulation of hard core pornography. Moreover, it is quite plausible that it was unnecessary to regulate sexual indecency prior to the enactment of the respective constitutional provisions because strong and homogeneous cultural norms obviated any such need. Apart from the fact that no compelling historical showing has been made for extending "freedom of expression" protection to the sale and promotion of obscene material, we note also that selling and promoting obscenity has been a crime in New York for roughly 120 years, thus lending additional force to the presumption that the statute is constitutional (see, McKinney's Cons Laws of NY, Book 1, Statutes § 150 [b]).

Nor do we read the case law as signaling that fundamental fairness and justice concerns of the State warrant according pornographic material greater protection than already obtains under the US Constitution. The Court of Appeals on at least two occasions declined to fashion a free speech/obscenity demarcation different from the Federal standard (see, People v Hollman, 68 NY2d 202, 204, n 2; People v Ferber, 57 NY2d 256, 259). The cases cited to the contrary by defendant are inapposite. In Bellanca v New York State Liq. Auth. (50 NY2d 524, revd 452 US 714, on remand 54 NY2d 228, cert denied 456 US 1006), the Court of Appeals held that a law prohibiting topless dancing in premises licensed by the State Liquor Authority was unconstitutional under both Federal and State free speech guarantees but received disparate treatment in the United States Supreme Court only because of the curtailing effect the 21st Amendment had with respect to the 1st Amendment (supra, 54 NY2d, at 234-235). The case of People ex rel. Arcara v Cloud Books (68 NY2d 553) does construe New York's freedom of expression guarantee more broadly than its Federal counterpart, but it does so in the context of requiring the least restrictive means of abating a nuisance in a bookstore which was selling sexual but not obscene material and was itself innocent of the illegal acts committed on its premises by its patrons. Finally, People v P. J. Video (supra) involves NY Constitution, article I, § 12, the search and seizure provision, not section 8. In short, if there is a basis for

giving obscenity more benign treatment under the NY Constitution than the US Constitution, defendant has not demonstrated it. Indeed, it may be the case that New York views pornographic materials endured in other States offensive *(cf., People ex rel. Arcara v Cloud Books, supra,* at 557; *compare, e.g., Smith v United States,* 431 US 291, 294-295 [Iowa's treatment of pornography]).

◼ A few of defendant's other contentions merit brief comment. Defendant argues that County Court erred by instructing the jury to determine obscenity based upon the community's "acceptance" of the particular materials, and maintains that the court should have used the word "tolerance" instead. While "tolerance" would have been a better choice *(see, Red Bluff Drive-In v Vance,* 648 F2d 1020, 1029, *cert denied sub nom. Theatres W. v Holmes,* 455 US 913), "acceptance" has been condoned *(see, Smith v United States, supra,* at 297-298) and a fair reading of the jury charge conveys the properly broad meaning of acceptance. In any event, since defendant has not appealed the jury's finding that its magazines were substantively obscene, we must assume they are, and thus if there was error it was harmless.

◼ Defendant quite correctly points out that the single sale of two magazines, though separately wrapped and priced, constituted but one count, not two, of promoting obscene material *(see,* CPL 40.20 [2]; *see, Matter of Braunstein v Frawley,* 64 AD2d 772, 773) and that the counts should have been combined. Inasmuch as defendant was sentenced concurrently on each count, the error was harmless.

◼ As for defendant's assertion that in an effort to demonstrate prevailing community standards it should have been permitted to introduce comparable magazines received in evidence at an earlier trial had in Broome County, wherein the jury acquitted a local bookstore of obscenity in the second degree, it suffices to note that defendant must establish a foundation demonstrating both similarity of the material and reasonable community acceptance *(see, United States v Womack,* 509 F2d 368, 375-377, *cert denied* 422 US 1022) and, as County Court observed, the earlier not guilty verdict does not equate to acceptability, it simply says that the People did not prove every element of their case beyond a reasonable doubt.

We have considered defendant's remaining arguments and find them unconvincing.

MAHONEY, P. J., CASEY, LEVINE and MERCURE, JJ., concur.

Judgment modified, on the law, by combining the two counts upon which defendant was convicted into one count, and, as so modified, affirmed.